# D



*United States Attorney*
*Southern District of New York*

FOR IMMEDIATE RELEASE
June 16, 2004

CONTACT: U.S. ATTORNEY'S OFFICE
MARVIN SMILON, HERBERT HADAD,
MEGAN GAFFNEY
PUBLIC INFORMATION OFFICE
(212) 637-2600

## U.S. INDICTS TWO MEN IN SCHEME TO EXPORT MILITARY NIGHT-VISION EQUIPMENT TO HIZBALLAH

DAVID N. KELLEY, the United States Attorney for the Southern District of New York, announced the filing of a three-count Indictment in Manhattan Federal Court against NAJI ANTOINE ABI KHALIL and TOMER GRINBERG for their involvement in a scheme to ship night-vision goggles, infrared aiming devices, and other military night-vision equipment to Hizballah, the Lebanon-based terrorist organization. KHALIL is charged with attempting to provide material support and resources to a terrorist organization and attempting to contribute goods to a specially designated terrorist. KHALIL is also charged, together with GRINBERG, with conspiring to export sensitive military night-vision equipment out of the country without first obtaining the necessary licenses from the State Department and the Commerce Department.

According to a Complaint which was previously filed in the case, KHALIL - who holds dual citizenship in Canada and Lebanon - is the Chairman and General Manager of New Line

Services, an import/export shipping company located in Montreal, Canada. Prior to engaging in the night-vision equipment export transaction that is charged in the Indictment, KHALIL had been the subject of a long-term money laundering investigation run out of the FBI's Little Rock, Arkansas office. During that investigation, KHALIL was recorded in numerous meetings with a confidential witness (the "CW"). In one of those meetings conducted in Beirut, Lebanon, in August 2001, KHALIL told the CW that he traveled all over the world collecting money which was then laundered through Bank Al-Madina in Beirut. KHALIL further stated that his organization had been laundering money for Russian Organized Crime for some time, using bank accounts at Bank Al-Madina.

As explained in the Complaint previously filed in this case, during recorded meetings between the CW and KHALIL that took place in a hotel room in Los Angeles, California, in 2002, the CW introduced KHALIL to an undercover agent posing as a heroin dealer. During one of those meetings, KHALIL accepted $100,000 in cash from the undercover agent to launder through the Bank Al-Madina. Also during that meeting, KHALIL told the CW that the largest amount of money he ever picked up was $160 million.

KHALIL has also been charged with conspiring to engage in money laundering in a Complaint filed in the Eastern District of Arkansas.

According to the Complaint previously filed in Manhattan Federal Court, on or about May 17, 2004, KHALIL flew from Canada to New York to meet with the CW regarding a shipment of stolen electronics that needed to be exported out of the country. KHALIL and the CW met several times on May 17 and May 18 at the Marriott Marquis Hotel in Manhattan. Those meetings were monitored by law enforcement agents from an adjoining hotel room on a video and audio monitor. During the meetings, the CW told KHALIL that he had a customer who wanted to ship night-vision goggles to Hizballah in Athens, Greece. KHALIL responded that it was not a problem and he had "friends."

As explained in the Complaint previously filed in this case, during another meeting between KHALIL and the CW at the Marriot, the CW introduced KHALIL to another undercover FBI agent who was posing as the CW's customer. The undercover agent told KHALIL that he wanted to ship night-vision goggles and infrared aiming devices to Athens, Greece. The undercover agent provided KHALIL with the point of contact and address of individuals who would receive the shipment in Greece. KHALIL agreed to create a fictitious bill of lading so that the items being shipped and the identity of the shipper would not be revealed.

Also according to the Complaint, on the morning of May 19, 2004, KHALIL and GRINBERG, an Israeli citizen employed at the Tober Group, a shipping and logistics company based in Brooklyn, New York, met with the undercover agent at Manhattan

Mini Storage located at 645 West 44th Street in Manhattan to pick up the night-vision equipment. The undercover agent showed KHALIL and GRINBERG a crate filled with fourteen pieces of "Generation 3" night-vision equipment, including night-vision goggles and infrared aiming devices. The infrared aiming devices were designed to be mounted on M-16 and other military rifles for target acquisition purposes when using night-vision goggles. Generation 3 is the highest level of night-vision technology and cannot be exported without a license.

As explained in the Complaint, KHALIL tried on the night-vision goggles. GRINBERG told the undercover agent that he didn't need to try on the equipment because he had military experience and knew what the items were. GRINBERG also said that he had access to these types of night-vision goggles. KHALIL and GRINBERG then loaded the equipment inside a minivan. KHALIL also accepted a down payment of $2,500 from the undercover agent for the shipment to Greece. KHALIL and GRINBERG were then placed under arrest.

KHALIL was arrested on the charges in the Complaint on May 24, 2004 and detained. KHALIL had previously been arrested and detained on the basis of the Arkansas money laundering charges. GRINBERG was arrested on May 19, 2004 on a separate Complaint charging him with export violations. GRINBERG was released on a $100,000 personal recognizance bond, secured by $20,000 in cash and co-signed by two people.

KHALIL, 39, resides in Beirut, Lebanon, and Montreal, Canada. GRINBERG, 30, resides in Manhattan.

If convicted on the charges in the Indictment, KHALIL faces a maximum combined penalty of 30 years' imprisonment, and a $750,000 fine. GRINBERG faces a maximum penalty of 5 years' imprisonment and a $250,000 fine.

MR. KELLEY praised the investigative efforts of the Federal Bureau of Investigation, the United States Commerce Department, the Department of Homeland Security and the New York City Police Department.

Assistant United States Attorney DAVID P. BURNS is in charge of the prosecution.

The charges are merely accusations, and the defendant is presumed innocent unless and until proven guilty.

04-126 ###

# E

**United Credit Bank** s.a.l.
Verdun BRANCH

Date : 21/11/2002 11:22
REF.: 325687

UCB

HAMIEH IHAB ABDELRAHMAN

الإعتماد المتحد ش.م.ل

## DEBIT ADVICE

ACCORDER YOUR INSTRUCTIONS

WE DEBIT YOUR ACCOUNT NO. 031.1012851008622004 WITH THE TOTAL AMOUNT

| | | |
|---|---|---|
| | USD | 100,000 |
| TRSF.CHARGES | USD | 5 |
| CORR.CHARGES | USD | 10 |
| SWIFT COST | USD | |
| TRSF. COMM. | USD | |

BEING TRANSFER IN FAVOUR OF :

BLOM BANK(BLISS BR)-MOSTAPHA TLASS-AC#033-02-300-0882123-1-4
BLOM BANK(BLISS BR)-MOSTAPHA TLASS-AC#033-02-300-0882123-1-4
BLOM BANK(BLISS BR)-MOSTAPHA TLASS-AC#033-02-300-0882123-1-4

| | | |
|---|---|---|
| TOTAL | USD | *100,015 |

VALUE : 28/11/2002

One hundred thousand fifteen and 00/100 U.S. DOLLARS ONLY

CLIENT'S SIGNATURE

**United Credit Bank** s.a.l.

Att: Mr. Dave
or: Mr. Tom

Head office Rasheed Karameh Street, Burj Al-Masrafia Bldg. Tel: 01/792795/6/8/9 - 01/793301- Fax: 01/795094 - 01/795096 Swift: UNCDLBBE P.O.Box: 13-5086 Beirut - Le

السادة بنك الاعتماد المتحد

تحية وبعد

يرجى اجراء حوالة بقيمة 100000 $ مئة الف دولار اميركي لأمر [illegible]

بنك لبنان والمهجر فرع بلس لحساب السيد مصطفى طلاس حساب رقم
033-02-300-0882123-1-4

في 28/11/2002 وتسجيلها على حسابنا لدى فرعكم رقم 8622

بيروت 9/11/02

SIGN. VERIFIED

# F

(1)

[illegible] [illegible]

[illegible]

Instance Type and Transmission

[illegible] (Transmission) of Original sent to SWIFT (ACK)
Network Delivery Status : Network Ack
Priority/Delivery : Normal
Message Input Reference : 1205 [illegible]

Message Header

Swift Input : FIN 103 Customer Transfer
Sender : UNCBLBBEXXX
UNITED CREDIT BANK SAL
BEIRUT LB
Receiver : PNBPUS3NNYC
WACHOVIA BANK, NA
(NEW YORK INTERNATIONAL BRANCH)
NEW YORK,NY US

Message Text

20: Transaction Reference Number
[illegible]
32A: Value Date, Currency and Amt
Date : 21 October 2002
Currency : USD (US DOLLAR)
Amount : [illegible]
50: Ordering Customer
RENE EMILE MOAWAD
52A: Ordering Institution - Address
[illegible]
57A: Account With Institution - Addr
CHASE MANHATTAN BANK
ONE CHASE MANHATTAN PLAZA New York
NEW YORK 10005 ABA 021000021
CHIPS UNIVERSAL ID [illegible]
59: Beneficiary Customer
[illegible]
[illegible] INTERNATIONAL INC. [illegible]
[illegible] FUND
FOR FURTHER CREDIT RENE EMILE
MOAWAD A/C [illegible]
71A: Details of Charges
BEN

Message Trailer

{MAC:[illegible]}
{CHK:[illegible]}

Interventions

Category : Network Report
Creation Time : 18/10/02 12:05:06
Application : SWIFT Interface
Operator : SYSTEM
Text:
[illegible]

SWIFT - 1840s.

CHIPS

• Wiring system

10/4/2004



United Credit Bank s.a.l.

```
20.11/02-11:46:08                         LocalSwiftAcks-5938-008439

--------------- Instance Type and Transmission ---------------
Notification (Transmission) of Original sent to SWIFT (ACK)
Network Delivery Status    : Network Ack
Priority/Delivery          : Normal
Message Input Reference    : 1145 021120UNCDLBBEAXXX4359020877
--------------------------- Message Header -------------------
Swift Input      : FIN 100 Customer Transfer
Sender           : UNCDLBBEXXX
          UNITED CREDIT BANK SAL
          BEIRUT LB
Receiver         : PNBPUS3NNYC
          WACHOVIA BANK, NA
          (NEW YORK INTERNATIONAL BRANCH)
          NEW YORK,NY US
--------------------------- Message Text ---------------------
 20: Transaction Reference Number
     OTF/876/02
 32A: Value Date, Currency Code, Amt
     Date              : 21 November 2002
     Currency          : USD (US DOLLAR)
     Amount            :                 #560,000.$
 50: Ordering Customer
     MR RENE MOUAWAD
 52D: Ordering Institution-Name & Addr
     VERDUN BRANCH
 57A: Account With Institution - BIC
     UBSWUS33
     UBS AG
     STAMFORD,CT, US
 59: Beneficiary Customer Name & Addr
     /83686
     FERRIER LULLIN N CIE SA
 71A: Details of Charges
     BEN
 72: Sender to Receiver Information
     /BNF/ ATT MR ASMAR
--------------------------- Message Trailer ------------------
{MAC:A139A6FC}
{CHK:F99C946D6453}
--------------------------- Interventions --------------------
Category         : Network Report
Creation Time    : 20/11/02 11:45:05
Application      : SWIFT Interface
Operator         : SYSTEM
Text
{1:F21UNCDLBBEAXXX4359020827}{4:{177:0211201145}{451:0}}
```



LocalSwiftAcks-5555-007232

10/02-13:44:51

Instance Type and Transmission

Notification (Transmission) of Original sent to SWIFT (ACK)
Network Delivery Status : Network Ack
Priority/Delivery : Normal
Message Input Reference : 1344 021008UNCDLBBEAXXX4317019648

Message Header

Swift Input : FIN 100 Customer Transfer
Sender : UNCDLBBEXXX
UNITED CREDIT BANK SAL
BEIRUT LB
Receiver : PNBPUS3NNYC
WACHOVIA BANK, NA
(NEW YORK INTERNATIONAL BRANCH)
NEW YORK,NY US

Message Text

20: Transaction Reference Number
OTF/768/02
32A: Value Date, Currency and Amt
Date : 15 October 2002
Currency : USD (US DOLLAR)
Amount : #1,000,000.#
50: Ordering Customer
RENE MOUAD
52D: Ordering Institution - Address
VERDUN BRANCH
56A: Intermediary - BIC
UBSWUS33
UBS AG
STAMFORD,CT US
57D: Account With Institution-Addr
BANQUE SAFRA FRANCE
101 WA 274151-000
59: Beneficiary Customer
/ 75344
RENE MOUAD
71A: Details of Charges
BEN

Message Trailer

{MAC:F6DDD068}
{CHK:202B39F43C57}

Interventions

Category : Network Report
Creation Time : 08/10/02 13:44:09
Application : SWIFT Interface
Operator : SYSTEM
Text
{1:F21UNCDLBBEAXXX4317019648}{4:{177:0210081344}{451:0}}

Moawad

Capital L.L. 24,600,000,000 Fully Paid List of Banks Number 104 - C.R.B. 46962 Tel.: 01-792795/6/8/9 - 01-791161 Fax: 01-795094 - 01-795096 P.O. Box : 13 5086

# G

Dr A 470 Lig
785 buildup

## Payments in favour of Bank Al-Madina Sal Beiruth 1997 to date.

| Value Date | Currency | Amount | Bank | Beneficiary | Account number | Reference |
|---|---|---|---|---|---|---|
| 14-Nov-97 | USD | 2'500'000.00 | Bank Al Madina Beirut | Ibrahim Abou Ayyash | 01.06.01.49.12 | - |
| 09-Feb-98 | USD | 500'000.00 | Bank Al Madina Beirut | Ibrahim Abou Ayyash | 01.06.01.49.12 | - |
| 14-Apr-98 | USD | 35'000'000.00 | Bank Al Madina Beirut | Ibrahim Abou Ayyash | 01.06.01.49.12 | - |
| (8) 04-Okt-00 | USD | 10'000'000.00 | Bank Al Madina Beirut | Dr. Adnan Abou Ayyash | 00069911 | - |
| (14) 28-Mrz-01 | USD | 50'000'000.00 | Bank Al Madina Beirut | Dr. Adnan Abou Ayyash | 00069911 | - |
| (15) 03-Apr-01 | USD | 20'000'000.00 | Bank Al Madina Beirut | Dr. Adnan Abou Ayyash | 00069911 | - |
| (19) 08-Okt-02 | USD | 100'000'000.00 | Bank Al Madina Beirut | Dr. Adnan Abou Ayyash | 00069911 | - |
| 08-Jan-03 | USD | 25'000'000.00 | Federal Reserve Bk of New York | Banque du Liban Beirut | 021084694 | Dr. Adnan Abou Ayyash |
| 12-Feb-03 | USD | 66'000'000.00 | Federal Reserve Bk of New York | Banque du Liban Beirut | 021084694 | Dr. Adnan Abou Ayyash |

Christopher Koenitzer
Director

Olivier Meystre
Managing Director Senior Advisor

Attachment letter October 23rd, 2003

بنك المدينة
BANK AL-MADINA

KOLAYLAT RANA ABDULRAHIM
BANK AL-MADINA SAL

Branch: HEAD OFFICE
Date : 19/12/2002
Time : 00:34:36
Code : LOB

HEAD OFFICE SIMPLE TRANSACTION

ACCT/NAME/NARRATIVE---VALUE---CUR------------N A M E----------
OLD ACC.: 00-02-466003-000526-02
00-02-463-000526-02 19/12/2002 USD KOLAYLAT RANA ABDULRAHIM
Credit Amount : 100,000,000.00 TIME SAV.ACC-BOD&MAJOR SHAREHO
TROF.

Capital:L.L.45.540 Billion fully paid. B.L. 105 - C.R.B.:46164 - Tel: 01 / 351296 - 351298 - P.O.Box:113-7221

11.2002

مستند رقم ٤

مصرف لبنان
المجلس المركزي
١٢/م م/٢٧٧

بيروت، في ٤ تشرين الثاني ٢٠٠٢

حضـــرة رئيـــس مجلـــس إدارة
بنـــك المدينـــة ش.م.ل المحتـــرم

Increase in capital

Fungal. R.S letter

الموضوع: الموافقة على زيادة رأس المال .

المرجـــع: كتابكم تاريخ ٢٠٠٢/١٠/٨

بالاشارة الى الموضوع والمرجع المبينين أعلاه، نفيدكم أن المجلس المركزي المنعقـد بتاريخ ٢٠٠٢/١٠/٣٠ ، اتخذ القرار رقم ٠٢/٢٩/٣ التالـــي:

الموافقة لبنك المدينة ش.م.ل على زيادة رأس المال ليصبح لغاية مئتي مليـــار لـــيرة لبنانية، على أن يسري مفعول هذه الزيادة ابتداء من ٢٠٠٢/١٢/١.

وتفضلـــوا بقبـــول الاحـــترام
حاكم مصرف لبنـــان

رياض

رياض توفيق سلامه

- نسخة الى لجنة الرقابة على المصارف.
- نسخة الى مديرية الشؤون القانونية.
- نسخة الى مديرية المصارف.
- نسخة الى مديرية الاحصاءات والابحاث الاقتصادية.

10/10

شارع مصرف لبنان، ص.ب. ٥٥٤٤-١١ بيروت - هاتف: ٣٤١-٢٢٠/٩٠ (٩٦١-١) - فاكس: ٦٠٢-٢٢٤ (٩٦١-١)

# H

# Document
# -3-

"NOTE page 8" re transfer of Dr Adnans funds

RIHAN & OBEID CENTER FOR JURIDICAL TRANSLATION
* SWORN AND ACCREDITED TRANSLATORS * LEGALIZATIONS ACCOMPLISHMENT * TYPING * CONFERENCES *
Union Affiliation № 41; 44 * ПРИСЯЖНЫЙ ПЕРЕВОДЧИК * Document № ............

## Merits Plea

We the Appeal General Attorney in Beirut:

- Upon verifying the preliminary examinations and interrogations, as well as upon verifying the demand document nº 1836/2004 dated January 31,2004, it appears that it was imputed to:

1. Rana Abdul Rahim KOLEILAT, her mother's name is Massarra, born in 1967, Lebanese.
2. Joumana Mohamad AYYAS, her mother's name is Salwa, born in 1959, Lebanese.
3. Each party that the examination might reveal.

That in Beirut and recently, that is to say in a non-subject to any other party that the examination might reveal, committed the falsification of some official documents issued by the Central Bank of Lebanon. Yet, they also used the false documents aiming to usurp the monies of the depositors by Fraud, such offenses being the crimes provided by articles 460, 454/459 and 655 P.C.

Consequentially to the examination the following appears:

**First: The Facts or Findings**

- During 2002, and due to some financial problems, the trustees (members of the Boards) of Al-Madina Bank and the Allied Credit bank, Mr. Adnan and Ibrahim ABOU AYYACHE, had the idea to merge both mentioned banks under the Name of "Al-Madina Bank", and so pursuant to the Law of Banks Merger Easing nº 192 on January 04.1993, which enforcement got prolonged through law nº 679 on March 16.1998. Dr. Adnan ABOU AYYACHE sent a letter on November 08,2002 to his Excellency, the Governor of Bank of Lebanon, Mr. Riad SALAME. Yet, the Governor bureau received said letter on November 11,2002. The sender did inform the addressee that as of his quality as the chairman of the Board at each one of Al-Madina Bank and the Allied Credit Bank, he is proceeding with some serious measurements aiming to merge said two banks as soon as possible, hoping that such issue gains the Governor

OFFICE : CORNISH AL-MAZRAA, EL-HASHEM BLDG, GROUND FLOOR, BESIDE "BOURJ CENTER", BEFORE "LIBAN POST",
TEL/FAX: 00961 - 1 - 705346 * 3 - 342310 * 3 - 662596 * E-mail: moutarjem@hotmail.com * BEIRUT - LEBANON.

trust. It appeared that on January 13,2003, i.e. one day prior to the expiry date of the legal delay to submit the merger demands, **Dr. Adnan ABOU AYYACHE** as of his quality of the Chairman of the Board the General director at Al-Madina Bank, **and Sheikh Ibrahim ABOU AYYACHE** as of his quality of the deputy chairman of the Board, the General Director of the "Allied Credit Bank, **applied** before his Excellency the chairman of the Central Bank of Lebanon, submitting so a demand, appended with the relevant document, in order to merge said two banks, but nevertheless they didn't join to their file the auditor's report, conserving the evaluation of the budget elements within each one of the two banks. Yet, the file was lacking, as well of 2002 budget.

The Central Bank of Lebanon did not take any ulterior decision in replying or corresponding to said demand. Yet, financial problems remained getting worse in said two banks

- On November 08,2003 a meeting was held in Bank of Lebanon. There were present, his Excellency the Governor on a one side, whilst on the other one it counted Adnan ABOU AYYACHE both brothers in Law Saleh SAAB and Jamil Haidar in addition to attorney-at-law Antoine Ghanem, taking into consideration that Dr. Adnan ABOU AYYACHE is a quasi permanent resident of the Kingdom of Saudi Arabia.

The meeting agenda or object was to discuss the issue of the deficit within said two banks further to other banking affairs.

During the meeting Saleh SAAB requested the Governor to provide (them) a loan varying between twenty or thirty Millions of American dollars, to cover the remaining deficit after the real-estate conversion into cash. The Governor replied that it is not possible to accord such loan. Saleh SAAB had a file including photocopies of some documents that were sent by Adnan ABOU AYYACHE to the Governor. Yet, the latter took one of said documents, which is a photocopy of a letter. His Excellency, the Governor of Bank of Lebanon, Mr. Riad Toufic SALAME issued and signed on November 25,2002, under the Title and the Logo of Bank of Lebanon, the Central Board and n° 377/MM/17.

This letter was addressed to the chairman of the Board of Bank of Lebanon, with the following object: Approval on the merger, whilst its

02 OCT 2004

reference is: the Letter of Bank Al-Madina chairman of the Board on November 09/2002.

Said letter did inform Mr. ABOU AYYACHE that the Central Board held on November 20,2002, took resolution n° 5/29/02 which approves on the merger operation between Al-Madina and the Allied Credit Banks, further to accord to Al-Madina Bank, the support loan amounting /250/ billions for a term of thirty years, without any interest rates, provided said amounts are registered or deposited at once in Al-Madina Account.

Said Document included a mention at its end, about notifying a copy of it to each one of the control committee, the legal Affairs Directorate (Legal Department), the Department of Banks, the Financial Statistics and Researches department. It also included the Direction of the Central Bank of Lebanon, the P.O. Box number, the phone and the fax numbers.

The Governor got acquainted with the photocopy of said letter and denied to be the party that issued it. Then, Saleh SAAB submitted to the Governor another letter photocopy, which also was issued and signed by the Governor of Bank of Lebanon, as well, on December 09,2002.

Alike its precedent, said letter bore the name, logo and address of Bank of Lebanon, further to the Central Council or Board with the following n°377/MM/17. Said letter was addressed to the chairman of the Board of Al-Madina Bank whilst its object was to transfer the amount of 180 millions of American dollars. It also enclosed that the Governor, further to having got acquainted with the letter of the chairman of the Board at Al-Madina Bank, under ref. N°222/M/1223 on November 21, 2002, whereas he informs Bank of Lebanon about having transferred the sum of 200 millions American dollars, earlier to the end of November 2002, Bank of Lebanon is calling him to abide by Transferring the outstanding sum, before December 12,2002, otherwise it shall regretfully be obliged to take the necessary measurements and withdraw the support loan. The Governor of Bank of Lebanon did deny being aware of such letter. His Excellency the Governor further denied to be the party who issued it, as well as he denied that he issued any further documents, which Saleh SAAB had the photocopies and had informed him about.



- That on November 11/2003, Mr. Riad Toufic SALAME as of his personal quality and as of being the Governor of Bank of Lebanon, as well as The Bank of Lebanon itself filed an action while constituting themselves as civil parties before the Cassation General Prosecutor, against an unknown party and against any one who is revealed by the instruction as a doer, or an intervener or an accomplice or an instigator for the crime of both two said documents' falsification and Fraud, pursuant to articles 453 and following, 471 and 655 P.C. it appeared out of the testimony of Magida Abdul Khaled, the Secretary of the Central Board beneath the Bank of Lebanon, during the preliminary instructions conducted by the Cassation General Prosecutor bureau that said two above-mentioned documents were false due to the following:

1. The merger operation issue between Al-Madina bank and the Allied Credit Bank wasn't discussed by the Central Council neither deliberated. Accordingly, the Central Council did not issue any preliminary nor final resolution regarding the approval on merging the two banks. Yet, no merger account was opened In favor of Al-Madina Bank.

2. The adopted test regarding the manger operation is absolutely different from the text drafted in the letter of November 25/2002 which falsification is alleged.

3. The object of the letter dated November 25/2002, on the contrary of the applied practice at the Bank of Lebanon, doesn't include the conditions to accord the loan, neither its term, nor the currency, or the interest rate, since there is absolutely no way to accord a loan without any interest rates as it is provided in the letter alleged to be falsified.

4. Mrs. Magida Abdul Khaled is the party who assume the preparation of the correspondences regarding the central Board business, which are to be signed by the Governor of Bank of Lebanon. Yet, since early 2001, and since the first session of the higher Banking Committee that was held regarding Al-Madina Bank, the Central Board did not issue any letter to be addressed to Al- Madina Bank, since the higher Banking Committee was the authority dealing with this issue; and in case of any such letter issuance alike the one of November 25/2002, other authorities, different from those determined in the letter, are to be notified.

02



5. Using a sheet under the Header and the address of the Central Committee is contrary to the rules and cannot be issued by the Central Board.

6. The printing font used in these two letters is different from the one used at Bank of Lebanon. Yet, the expressions and the drafting style are not the ones applied for the Central Committee.

7. The Central Board did not meet on November 20/2002, as it is provided in the letter dated November 25/2002, which falsification is alleged.

8. Because the Resolution n° 5/29/02 is relevant to another Bank and has nothing to do with neither the merger operation nor Al-Madina Bank.

9. Because the letter alleged to be falsified and which is dated on December 09/2002, which photocopy Mr. Saleh SAAB submitted to the Governor of Bank of Lebanon on the meeting held on November 08/2003, was sent to Adnan ABOU AYYACHE in Saudi Arabia by Fax and from a phone under n° /346 742/ on December 10/2002, at 1:14 p.m. Yet, said phone number exists at Al-Madina Bank, the General Directorate, more precisely in the office of the defendant Joumana AYYAS who works as a secretary under the supervision of her maternal uncle wife Rana KOLEILAT, the Bank Manager who did hire her as an employee.

- Defendant Rana KOLEILAT was the Manager and Supreme authority at Al-Madina Bank. She used to come each and every day to work at the General Directorate of Said Bank, all long 2002 year, except for the two last months, i.e. November and December whereas her presence at the Bank was limited to three times per week, whilst the chairman of the Board, Mr. Adnan ABOU AYYACHE used to reside quasi permanently in Saudi Arabia, and his brother Ibrahim ABOU AYYACHE didn't come to the bank unless for once or twice a week. Yet, the correspondence from Bank of Lebanon used to be received by either the employee, Leila CHRARA who works at the General Directorate with the defendant Joumana AYYAS or with both defendants Rana KOLEILAT and Joumana AYYAS. All Such correspondences used to be handed, at the end, to Rana KOLEILAT, who gets acquainted with them in order to give part of



them back to either Leila CHRARA or Joumana AYYAS to be deposited in the Archues files at the office of Joumana AYYAS, while she used to keep the other part.

- All the correspondences between Al-Madina Bank, Adnan & Ibrahim ABOU AYYACHE and the Bank of Lebanon, regarding the merger project of Al-Madina and the Allied Credit Banks were accomplished by the offices of the Defendant Rana KOLEILAT.

Lawyer Othman ARAKJI, the attorney of Al-Madina Bank attested that regarding the merger project no direct contact had occurred with Adnan ABOU AYYACHE but yet he used to send the texts required by The Bank of Lebanon to Al-Madina Bank and that Rana KOLEILAT counted amongst the parties who took part in the conversation with the Bank of Lebanon upon launching the merger idea, taking into consideration that she was empowered to represent both Adnan and Ibrahim ABOU AYYACHE and the two banks, while Ibrahim ABOU AYYACHE attested the correspondences with his brother Adnan used to occur with the offices of Rana KOLEILAT since 1999 upon his brother's request and that Rana KOLEILAT used to coordinate (all business) with the Governor bureau and lawyer ARAKJI. Yet, she convinced him about the merger operation.

- That on December 17/2002, the Cassation General Prosecutor bureau received a memorandum with some documents photocopies Adnan ABOU AYYACHE sent. Yet, they provide:

1. That the defendant Rana KOLEILAT sent him a letter dated November 4/2002, which issuance is imputed to the Governor of Bank of Lebanon, said letter holds the address of the Bank of Lebanon the Central Board and the nº 377/MM/17.

Further more, said letter was addressed to Al-Madina chairman of the Board of Directors; it included the approval of the Central Board, held on October 30/2002 through its resolution nº 3/29/02 about increasing the Capital of Al-Madina Bank till the figure of two hundred billions Lebanese Pounds, provided the increasing clause enters into force as of December 01/2002. he provided a photocopy of said letter in his Memorandum and added, that with reference to said letter, he (Adnan ABOU AYYACHE) transferred the sum of one hundred millions American dollars to his

02



personal account n° 69911 at Al-Madina Bank, aiming to pay it afterwards for increasing the Capital.

2. That he sent to the Governor of Bank of Lebanon, by the intermediation of Rana KOLEILAT, a letter dated on November 18/2002, under ref. N° 216/M/1623, including a demand for both Banks merger's approval.

3. Rana KOLEILAT did notify him over the phone, on November 20/2002 that the Central Board at the Bank of Lebanon, held on November 20/2002 took the resolution n° 5/29/02 about the approval on the merger operation and about according the support loan amounting 250 billions Lebanese Pound for a thirty-year term without any interests provided such amount is registered immediately in Al-Madina Bank.

4. That he sent to the Governor of Bank of Lebanon another letter, by the intermediation of Rana KOLEILAT, dated on November 21/2002 under n° 222/M/1623, including his gratitude for approving the merger operation and the support loan granting. He informed the Governor that he will transfer two hundred millions American dollars before the end of the month as a consignment at the Bank of Lebanon.

5. On November 25/2002, Rana KOLEILAT notified him with the merger approval and the support loan granting, alleged to be falsified. Rana KOLEILAT also sent him another letter, the Governor of the Bank of Lebanon issued under the same number 377/MM/17 including a demand to transfer the amount of 200 millions American dollars before the end of the Mont. He also was notified with a following letter by Rana KOLEILAT which issuance is imputed and alleged to be of the Governor as well. Yet, said letter had also the same reference number of the letters alleged to be false, and it included informing him about the resolution of the Central Board, held on November 20/2002 under n 6/29/02, which grants him the right to open an account at the Bank of Lebanon under a certain number.

6. That Rana KOLEILAT sent him on December 10/2002 the second alleged to falsified letter, which date is December 09/2002 and which included the Governor's call addressed to him to transfer the amount of

02



two hundred millions before December 12/2002, otherwise, the support loan shall be withdrawn.

7. Due to the conditions he underwent at that moment, Adnan ABOU AYYACHE asked Rana KOLEILAT to negotiate with the Bank of Lebanon in order to let the figure become 150 millions American dollars and thereafter to transfer such amount on four payments to the Bank of Lebanon, as follows:

- 20 millions U$D on November 29/2002 from UBS Bank-Zurich.
- 80 millions U$D on December 12/2002 from UBS Bank-Zurich.
- 25 millions U$D on January 08/2003 from Credit Agricole Geneva.
- 25 millions U$D on January 08/2003 from UBS Bank, Geneva.

8. That it appeared to Adnan ABOU AYYACHE that the sum of one hundred and fifty millions U$D, that he transferred to the Bank of Lebanon in addition to the sum of one hundred millions U$D he transferred to his personal account ended at Rana KOLEILAT Account.

- It appeared afterwards out of the letter dated January 29/2004 which the Governor of Bank of Lebanon addressed to the Cassation general Prosecutor Bureau, that H.E the Governor did not receive the two letter Adnan ABOU AYYACHE addressed under nº 216/M/1623 and nº 222/M/1623 on November 18/2002 and on November 21/2002 which issue let us realize that the defendant Rana KOLEILAT did not communicate said two letters to the Governor.

- That on December 23/2003 Rima AMMASH KADDOURA, the General Cassation Attorney went to the General Directorate office within Al-Madina Bank, located at commodore Street-Hamra Quarter, and asked the provisional Director or Manger, Mr. André Bandaly to inform and get her acquainted with the files existing before the General Directorate of the Bank and which are relevant to the Correspondences that occurred between Al-Madina Bank and the Bank of Lebanon. The Provisional Director informed her that there were found some different papers within the drawers of a closet in defendant Joumana AYYAS, bureau. The Latter used to work as Rana KOLEILAT Assistant. Upon verifying these papers, the following appeared:

02 OCT 2004

1. there were a photocopy of a letter dated February 23/2001, which object is to open a bank branch at Bechara El-Khoury Street. Yet, the Governor of the Bank of Lebanon signed said letter, and addressed it to the chairman of the Board of Al-Madina Bank, under n° 304/1. upon revising the correspondences archived at Al-Madina Bank, it appeared said above-mentioned ref. N° refers in deed to a true letter issued by the Bank of Lebanon Governor's Bureau, on February 22/2000, but its object was different from the one provided in the photocopy of the letter bearing the date of February 23/2001 as above-mentioned, which issue proves the last letter isn't but a falsification in its contents. Yet, it used the reference and the signature figuring on the original letter, after its initial contents were erased.

2. Further more, Five blank sheets holding the Governor's signature and the ref. n°: 304/1 in addition of the Logo, were also found, with no further contents. They are photocopies of the original letter n° 304/1 which photocopying occurred after having hidden its contents. Afterwards they were used to obtain the false letter, object of Bchara El-Khoury branch's opening as afore-mentioned.

3. Further more, there were found a photocopy of a letter holding the date of August 14/1998, the Bank of Lebanon Central Board issued under n° 377/MM/17 and holding the signature of the Governor Riad SALAME. Yet, said letter was addressed to the chairman of the Board of Directors at Al-Madina Bank, and its object refers to opening three new branches in Jounieh, Elissar and Furn El-Chebbak quarters.

At its ends, said letter got a mention that said letter's C.C- were sent to each one of the following departments:

- The Banks Control Committee.
- The Legal Department.
- The Banking Department.
- The financial Research and statistics Departments.

It appeared that the original copy of said letter exists in the archives files regarding the Bank of Lebanon. Due to the comparison of the letter, bank of Lebanon alleged to be falsified and which ref. Number is 377/M.M/17 dated on November 25/2002 whilst being relevant to the

02 OCT 2004

merger approval, with the original letter the Central Board at the Bank of Lebanon issued under the same number,

Refers to a date on August 14/1998. It regards branches aperture and it appeared that the letter's logo, number and the Governor's Signature were used, in addition to the C.C. Remark at the end of the letter regarding said departments, in addition to the address of Bank of Lebanon and its phone numbers. By photocopying this original document, after hiding its contents, the authors could insert in the letter, the contents they wanted. This way they could commit the falsification, object of the present claim.

- Defendant Joumana AYYAS denied to have ever seen the documents alleged to be false as well as papers (sheets) that were found in the drawer of her office's closet. She also denied she knew the fax number /346742/ through which the letter dated December 10/2002 was sent to Adnan ABOU AYYACHE. Yet, she insisted on her denial. But afterwards she renounced her denial and confirmed that said fax does exist in her office. She also said in the preliminary instruction said she would be for sure the party who sent such letter (fax) since it's dispatched through the fax machine existing in her office, but that she didn't remember its contents, while Rana KOLEILAT, the defendant represented in her preliminary testimony on January 23/2004, p.17 that "Joumana AYYAS might have executed all the falsifications upon the instructions of Wissam ABOU AYYACHE, but want to charge me with them".

- It appeared out of the report of the Banks Control Committee, that defendant Rana KOLEILAT, did on November 20/2002, i.e. on the same date pointed out in Adnan ABOU AYYACHE Conclusion, that Rana KOLEILAT called him, by phone, to the Kingdom of Saudi Arabia, and informed him falsely that the Bank of Lebanon approved the merger operation and to accord the support loan, she transferred the accounts balances existing at Madina, and referring to Zenta S.A.L Company, Ahmad Ali AHMAD, Bilal SAYEGH, Mohamad Fadi SOBH, which total is /33.356/ billions of Lebanese Pounds and /2.549/ millions of American dollars, to a debtor account in her name. She also transferred other accounts to her account, which debtor balance amounts /450/ billions of Lebanese Pounds. On November 30/2002 Rana Committed this operation

02

on the contrary to the Bank of Lebanon Circulars, and by infringing the resolutions of the Banks Control Committee.

- It appeared, as well, out of the report of the Banks Control Committee that the sums Adnan ABOU AYYACHE transferred during December 2002 and January 2003, and which total is of /150/ millions of American dollars, were sold to the Bank of Lebanon in exchange of Lebanese Pounds Currency. Yet, they were deposited in the Al-Madina Bank's account at the Bank of Lebanon. Yet, said amount was blocked and deemed a compulsory reserve with no interests.

- It appeared that defendant Rana KOLEILAT asked the Accountant in chief, at Al-Madina Bank, Youssef El-HICHI, to make such monies entries and transferred by Adnan ABOU AYYACHE to the Bank of Lebanon on four payments in her loan account (advanced payment) and which debit balance amounted /450/ billions of Lebanese Pounds, and so under a verbal form, without handing him, within that frame, any written letter holding the signature of Adnan ABOU AYYACHE after she made him a promise to hand him or give him said letter at a later time. Youssef El-HICHI executed the demand of the defendant, thus the debit balance of Rana KOLEILAT the defendant decreased from /450/ billions Lebanese Pounds to /231/ billions Lebanese Pounds on January 13/2003, taking into account that the last entry operation occurred on said date. But Rana KOLEILAT didn't give Youssef El-HICHI any written letter signed by Adnan ABOU AYYACHE authorizing him to perform said operation, knowing that Mr. Adnan ABOU AYYACHE had notified, by phone, the Governor of Bank of Lebanon that the consignment or deposit amounting one hundred and fifty millions American Dollars is a personal deposit, which was not allocated therefore to cover the debit account of defendant Rana KOLEILAT at Al-Madina Bank. Further more, Adnan ABOU AYYACHE, did inform the Governor of Bank of Lebanon in writing and by Facsimile letter on February 14/2003 n° 222/M/1628 that he agrees to seize the amounts he transferred and which total was on February 10/2003, /150/ millions U$D into his personal account at Al-Madina Bank and deposited at Bank of Lebanon, according to the understanding that occurred between Adnan ABOU AYYACHE and the Governor about such subject matter. Additionally, Adnan ABOU AYYACHE

02 OCT 2004



informed the Governor through his letter on February 17/2003, which was legalized before Bourj-Hammoud Notary Public, Me Mansour SHALFOUN, under nº 1258/2003 that the sums he transferred previously are to cover the lacking cash money of both Al-Madina and the Allied Credit Banks towards the Central Bank.

- That while Defendant Rana KOLEILAT insisted that she deposited the amount of one hundred and fifty millions Americans Dollars in her advanced loan by agreement with Adnan ABOU AYYACHE and pursuant to the order of the Governor of Bank of Lebanon, the Governor and Adnan ABOU AYYACHE denied so.

**Second: The Evidences**

These findings were supported with the following evidences:

1. The summons.
2. The preliminary examinations instructions.
3. Copies of the produced document, which are alleged to be falsified.
4. Report of the Bank Control Committee, letters of the Governor of Bank of Lebanon.
5. Witnesses testimonies, and documents seized in the closet of Defendant Joumana AYYAS.
6. The meaning of the defendant's representations as well as the whole instruction.

**Third: The Law**

Whereas it is confirmed out of the action exhibits that there are many false documents, which issuance is imputed to the Governor of Bank of Lebanon, Riad SALAME and that are:

1. The letter dated November 25/2002, concerning the merger operation approval regarding Al-Madina and the Allied Credit Bank further to according the support loan.
2. The letter dated December 09/2002 and which includes the Bank of Lebanon call addressed to Adnan ABOU AYYACHE to transfer the money under reserve of withdrawing the support loan.



3. The letter dated November 4/2002 and which includes the approval of Bank of Lebanon concerning the capital of Al-Madina Bank increase, to become around two hundred billions Lebanese Pounds.

4. The letter dated November 25/2002, that includes the request the Governor of the Bank of Lebanon addressed to the chairman of the Board of Directors of Al-Madina Bank in order to transfer the sum of two hundred Millions American dollars before the end of the Month.

5. The letter dated November 25/2002, related to according to Adnan ABOU AYYACHE the right to open an account at Bank of Lebanon with the number of said account.

Knowing all such letters have the same number which is **377/M/17**, which fact ascertains they are false and that the first and Second letters are the Object of the claim filed by the Governor of Bank of Lebanon, whilst the photocopies of the third, fourth and fifth letters are produced in the action Conclusion, Dr. Adnan ABOU AYYACHE submitted on December 17/2003.

6. The letter dated on February 23/2001 under n° 304/1 concerning the subject matter of Bank of Lebanon approval, so that Al-Madina Bank opens a branch in Béchara El-Khoury street.

Whereas it is also proven that there were found within the drawers of the Closet existing in Joumana AYYAS, the defendant's Closet, a photocopy of the last letter n°(6) as above-mentioned and which contents are different from the one, composing the true letter issued by the Governor of Bank of Lebanon office, as well as it has a different date also. Further more a copy of a letter dated August 14/1998, issued by the Central Board at the Bank of Lebanon, under n° 377/MM/17 to open new branches of Al-Madina Bank, which is valid and true. Additionally five blank sheets, holding only the signature, the seal, the reference, the logo and the same number 304/1 were found, whilst free from any other content. They are photocopies of the original letter n° 304/1, which was photocopied after having hidden its contents. They are ready to be filled with the content the author wants.



Whereas it is confirmed as well that the defendant Joumana AYYAS was the party responsible or in-charge of archiving the correspondences related to Bank of Lebanon and there from issued, after the other defendant Rana KOLEILAT got acquainted with them.

Whereas the faxes Rana KOLEILAT sent to the Chairman of the Board of Directors, Adnan ABOU AYYACHE, were done through the offices of the defendant Joumana AYYAS exclusively, taking into consideration that the latter was the in-charge party of same according to the testimony of Leila SHRARA.

Whereas a photocopy of the letter alleged to be false, dated on December 09/2002, was sent to Dr. Adnan ABOU AYYACHE on December 10/2002 at 1:14 min. p.m. that is to say before the end of the working day time at the bank, through the fax n°: /346742/ existing at the defendant, Joumana AYYAS office, and the latter denied at the beginning that she knew this number relates to the fax machine at her office, while she is, for sure, the party who sent it, while she doesn't remember its contents.

Whereas the defendant Joumana AYYAS is the spouse of Rana KOLEILAT maternal uncle and that the latter did hire her at Al-Madina Bank.

Whereas all the correspondence related to the merger operation between Al-Madina and the Allied Credit Banks and with Dr. Adnan ABOU AYYACHE were not to be done unless through the defendant Rana KOLEILAT.

Whereas the defendant Rana KOLEILAT had alone the interest further to being the only beneficiary of the transfers Dr. Adnan ABOU AYYACHE made and which amount /150/ millions American Dollars, further to having be entried on the contrary to the applied banking rules and regulations, into her debit account aiming to decrease it, to the contrary to the Will of Adnan ABOU AYYACHE.

Whereas the act of the defendants Rana KOLEILAT and Joumana AYYAS who on purpose, created documents which are resolutions issued by the Governor of Bank of Lebanon, by means the original document after having hidden its contents

02



whilst they kept the tail of the document since it holds the signature of the Governor of Bank of Lebanon, his name as well as the departments to be notified with said resolution, further to the address of the Bank of Lebanon, the phone numbers, the P.O. Box n°, whilst the header of the document kept the name of the Bank of Lebanon the Central Board, the Logo of the Bank of Lebanon, while the Resolution number is 377/MM/17 or 304/1 and the party to which said letters isn't but the chairman of the Board of Directors of Al-Madina Bank. Thereafter the photocopy of the original copy which lacks of any contents, shall be filled with the content the defendant wants and so, in order to move false facts, as to say that the Central Board of Bank of Lebanon had resolved to approve the merger of Al-Madina and the Allied Credit Banks' merger, and that it agreed on according a support loan, to say they re true, further to some un-admitted or non-confessed facts to say they are admitted, to alter the resolutions of Bank of Lebanon, to provide or draft them under non-true form as they are pointed out under the facts title and to thereafter use such false documents by sending them through facsimile to the chairman of the Board of Directors of Al-Madina Bank, Adnan ABOU AYYACHE, are acts that constitute the falsification crime under its both aspects: the physical and the moral ones.

Using the forgery, is sanctioned by articles 459/460 and 459/460/454 P.C.

Whereas the monies Adnan ABOU AYYACHE transferred to Bank of Lebanon, upon the latter request, aim to provide the cash money for Al-Madina Bank, in order to ensure the depositors' funds at said bank, further to safeguard them.

Whereas the aim of both criminal offenses, the falsification and the use of false committed by the defendant, was to usurp such funds.

Whereas Rana KOLEILAT had recourse to the falsification crime and to use false (documents) with the help of the defendant Joumana AYYAS, in order to usurp, by means of Fraud, the funds of the depositors constitute the offense sanctioned by article 655, P.C. regarding Rana KOLEILAT, whilst it is sanctioned by article 655/219 regarding Joumana AYYAS.



02

**Therefore**

We do request his Honor, the Judge of the First Instruction to.

**First** : to deem the act of both Rana Abdul Rahim KOLEILAT and Joumana Mohamad AYYAS, as having the nature of the crime sanctioned by article 459/460 and 459/460/454 P.C.

**Second** : To accuse the defendant Rana Abdul Rahim KOLEILAT pursuant to the provisions of article 655, P.C.

**Third** : To accuse the defendant Joumana Mohamad AYYAS pursuant to the provisions of article 655/219 P.C.

**Fourth** : To reject the request of the defendant Rana KOLEILAT regarding setting her free.

**Fifth** : To join the offense to the crime for their conformability and to give us the documents to refer them before their competent authority.

On February 24/2004
The Appeal General
Attorney in Beirut

Pierre FRANCIS
(Signed & Sealed)

---

True translation of the Arabic text herewith attached
The Sworn Translator **Houssam Ahmad RIHAN**



# I

-- ------ Account Line: 70230-200-667.60L
Full Address: DR.ADNAN ABOU AYYASH
:71A: Details of Charges
BEN
S: TRAILER
MAC: Authenticator 73649D92
CHK: Checksum 3AB249E0B864 Status SC

**** END OF MESSAGE ****

**N.B: UBS, Zurich, confirmed that this Swift is fake.**

---

PRINTER: PRT5.1571.033118 QUEUE: FINOSN BY: PRT5
DATABASE KEY: 200305060919380000 USER KEY: 200305060919380000 PAGE: 1

London, the 6th of May 2003

Attention Mr Frank Honsson
HSBC – London
England

Dear Sir,

Kindly Close the account Number 229965 in US dollars since the interest rate is extremely low and does not cover the inflation rate.
Please proceed as from today to transfer the amounts as follow:

- 280 000 000 US$ (only Two Hundred Eighty Million American Dollars)
To the order of Dr Adnan Abou-Ayyach
UBS – Zurich – Switzerland
US$ Account number: 0230-200.667.60L.
Swift address UBSWCHZH80A
Value Date: May 8, 2003

- The remaining balance of the account number 229965 is to be transferred to my account "Rana Klailat"
At: UBS - Zurich - Switzerland
Account Number 0270-300.776.50
Swift address UBSWCHZH80A
Value Date: May 8, 2003

Sincerely
Rana Klailat

R Klailat
6/05/2003



Bank Al-Madina SAL
Head Office
PO BOX 113-7221
Beirut
Lebanon

04 September 2002

Attention: Mrs. Rana kolaylate

Dear Madam

This is to confirm that as per your instruction concerning your Time Deposit with us for USD.500,000,000.- we will transfer said amount plus interest from your account on 02.09.2003 to the account of Dr.Adnan Bou Ayyash number 239965 opened with us.

Please do not hesitate to contact us for any further assistance.

Yours sincerely

HSBC PLC
Group Relationship

HSBC Bank plc
Financial Institutions, PO Box 181, 27-32 Poultry, London EC2P 2BX
Tel: 020-7260 8000 Fax: 020-7260 5713/4

Registered in England number 14259 Registered Office: Poultry London EC2P 2BX
Regulated by the Personal Investment Authority and SFA
We only advise on our own life assurance, pensions and unit trusts

**HSBC BANK PLC**
**MAY 2002**

| | | |
|---|---|---|
| RJ CREAMORE A 22118 | J CHAUHAN A 22168 | SJ PITTS A 22358 |
| SC POTTER B 22394 | J DUDEK B 22395 | M WAIN B 22419 |
| N GRIFFITHS A 22484 | JM NEWTON A 22494 | DB STANLEY A 22497 |
| REP LEE A 22780 | AP CLASBY B 22858 | G WOOLFRIES A 23067 |
| MI RUSSELL A 23267 | AD BUTCHER A 23731 | MJF FRANCIS A 23733 |
| N BATES A 23830 | J FREER A 23833 | PM FIELDHOUSE A 23864 |
| DCJ HORAN A 23875 | CG GUILLARD A 24199 | JM BRADLEY A 24221 |
| JM WARWICK A 24322 | ACH HILL A 24340 | CA FEDEROLF A 24376 |
| CR PINK A 24402 | VJ SUMMERS A 24460 | RJ PERKINS A 24501 |
| JW SALE A 24667 | RJ PETTET A 24819 | SW GAMBLE A 24975 |
| DJD JAGOE A 24978 | KP KNOX A 25058 | IF MCMILLAN A 25120 |

CREDIT SUISSE FIRST BOSTON

CREDIT SUISSE FIRST BOSTON

Uetlibergstrasse 231
P.O. Box 900
CH-8070 Zurich
Switzerland

Telefon +41 1 333 59 52
Telefax +41 1 333 41 42

Zurich, 24th September 2002

Attention: Mrs Rana Kolaylate

Dear Madam,

We would like to inform you that all conventions and meetings with Mrs.Rana Kolaylate invested an agreement between us , so that we are ready to transfer the amount upon her request.

For any question you may have, please do not hesitate to contact us.

Yours sincerely,

CREDIT SUISSE FIRST BOSTON

Michael Knecht

Thomas Heine



Bank Al-Madina SAL
Head Office
PO BOX 113-7221
Beirut
Lebanon

27 September 2002

Attention: Mrs. Rana kolaylate

Dear Madam

Further to our letter dated 4 September 2002, concerning the placement of USD.500,000,000.- with us, and after your approval on abdicating the interest returned, we hereby agree and confirm irrevocably and unconditionally that the amount of USD.500,000,000.- will be placed with us in your name for four months from 01/10/02 till 03/02/03 and on maturity said amount will be transferred to the account of Dr.Adnan Abou Ayyash number 239965 opened with us until further instruction from his part.

In the meantime if you have any further questions please do not hesitate to contact us.

Yours sincerely

HSBC PLC
Group Relationship

HSBC Bank plc
Financial Institutions, PO Box 181, 27-32 Poultry, London EC2P 2BX
Tel: 020-7260 8000 Fax: 020-7260 5713-4



Bank Al-Madina SAL
Head Office
PO BOX 113-7221
Beirut
Lebanon

04 September 2002

Attention: Mrs. Rana kolaylate

Dear Madam

Based on the Agreement with you concerning placement of USD.500,000,000.- with us , we hereby confirm that the amount of USD.500,000,000.- has been placed with us in your name from 02.09.02 till 02.09.03 at an interest rate 1.75 pct .

In the meantime if you have any further questions please do not hesitate to contact us .

Yours sincerely

HSBC PLC
Group Relationship

HSBC Bank plc
Financial Institutions, PO Box 181, 27-32 Poultry, London EC2P 2BX
Tel: 020-7260 8000 Fax: 020-7260 57?3/4

Registered in England number 14259, Registered Office: Poultry, London EC2P 2BX
Regulated by the Personal Investment Authority and SFA.
We only advise on our own life assurance, pensions and unit trusts.