J

الجمهورية اللبنانية

مديرية الشؤون العقارية

امانة السجل العقاري في

# عقد بيع ممسوح

مكتب معاون

رقم السجل اليومي

رقم عقد العقد

| القسم | العقار | المنطقة العقارية | اصحاب الحق | المتعهدون | الحصة من اصل ٢٤٠٠ |
|---|---|---|---|---|---|
| ١١ | ٣٩٧ | عين الريحانة | رنا عبد الرحيم تليلات | وائل عبد الرازق سالم | ٢٤٠٠ |
| | | | | امير | |

## محضر العقد

في الساعة _____ يوم الاربعاء الرابع في شهر تموز سنة الفين واثنان

في بلدتي _____ (١)

امامنا نحن خالد عيتاني الكاتب العدل في رئيس المكتب المارد في

بيروت _____ بحضور

اسمه محمود محي الدين اللبناني المولود في بيروت سنة ١٩٦٥ والمقيم في العزيزه حسب تذكرة هويه رقم ١٠٨٩

علي بن حنفه صالح اللبناني المولود في بيروت سنة ١٩٥٠ والمقيم في البرينا حسب تذكرة هويه رقم ٨٩٥٥

ابو عمر جضحور

الفريق الاول : (٢) رنا عبد الرحيم تليلات اللبنانيه

مواليد بيروت سنه ١٩٦٧ سجل رقم ٢٨٢٩

والمزوعه اسم والدها نبيه مسريه

الفريق الثاني (٢) وائل عبد الرازق سالم

امير من الجنسيه الليبيه تولد لسنه ١٩٧٠

جواز سفره رقم ٢٠٠٢٥١ تاريخ ١٩٩٦/٦/٢٠

طرابلس ؛

wael

Rana

وبعد اطلاعها على قيود السجل العقاري قررا بالاتفاق التام والرضى التبادل امام شهود التعريف المذكورين اعلاه ، ما يأتي

ملاحظة هامة : على رئيس المكتب المارون ان يضرب بالمحبر خطأ منحرفا على كل بياض منزوك بدون استعمال في مستعملات العقد بعد ترتيبه

(١) مكان استعمال البند (٢) الاسم والقيمر : رقم الاب والمهنه ومحل وسنة الولاده حسب تذكرة : الهويه ، ومحل الاقامه ورقم تذكرة : الهويه



ثانياً : صرح الفريق الثاني المذكور آنفاً بقبوله شراء كامل __القسم ١١ من__ العقار رقم ٣٩٧ عين العريسة

_____ من أصل ٢٤٠٠ سهم يجمع الحقوق المتاربة لها

ثالثاً : صرح الفريقان المتعاقدان بان هذه الصفقة قد تمت لقاء مبلغ قدره __مليونين دولار____ أقر البائع بقبضه
من "الشاري" حال عقده نقداً وعداً .

شروط خصوصية :

أن الثمن المذكور بهذا العقد هو الثمن الحقيقي والفعلي
طلب الشتري تنفيذ هذا العقد معلله بعدم ايجاز براءة ذ م م مالية اربلند يتحملا ينالرسوم
فوض الفريق الثاني السيد محمود اسود__ تنفيذ هذا العقد لدى دائرة العقارية ودفع الرسوم واستلام سند
التمليك والتوقيع _____ د ر

وقد طلب الفريقان المتعاقدان ان تسجيل هذا العقد في السجل العقاري بعد ان حرر عنه نسختان وتعهما المتعاقدان (١) والشاهدان
المرئان (١) بمضروري وبعد ان تلي علماً عليها مضمون النسختين . وقد اقم الطرفان المتعاقدان بان هذا العقد لا يكتسب الصبغة
التنفيذية الا بعد مصادقة امين السجل العقاري عليه
وقد ابرز المتعاقدان وصلا من صندوق الخزينة في __بيروت_____ مؤرخاً في ٧/٢١ رقم _____ رقم
شعراً بدفعها الرسوم المترتبة على هذا العقد رقما _____ . ل

المتعاقدان

الفريق الثاني _____ الفريق الأول

الشاهدان المرئان

الأول _____

حرر في __بيروت__ بتاريخ _____

٣/١٣

(١) اذا كان المتعاقدان او احدهما يجهل كتابة امضائه فتطبع بعمة نشمر بده اليمنى اما المرئان فيجب ان يرقما امضاءهما كتابة

الجمهورية اللبنانية

مديرية الشؤون العقارية

امانة السجل العقاري في _____

عقد بيع مسوح

_____ /٥٠٩٢

مكتب ماردن _____

رقم السجل اليومي _____

رقم محضر العقد _____

| الرقم | العقار | المنطقة العقارية | اصحاب الحق | المتفرعات | الحصة من اصل ٢٤٠٠ |
|---|---|---|---|---|---|
| ١١ | ٣٢٧ | ميناء الحصن | وائل عبدالرازق سالم الحميسر | خالد ناصر قدم | ٢٤٠٠ |
| | | | | | |

محضر العقد

في الساعة _____ من يوم _____ الواقع فيه _____ من شهر _____ سنة _____

في دائرة _____ (١)

امانة امين خالد حريشة الناشف دائرة رئيس المكتب الماردن في _____ بحضور _____

حدموث سلمى اللبناني المولود في بيروت _____ سنة ١٩٩٦ والمقيم في تعزيم _____ حسب تذكرة هوية رقم ٠٥٨

حبيرات تيزوم اللبناني المولود في بيروت _____ سنة ٩٤٩٤ والمقيم في بتدريم _____ حسب تذكرة هوية رقم ٩٩٩ الجنير يين

حضر

الفريق الأول (١) وائل عبد الرازق سالم الحميسر _____ الفريق الثاني (٢) خالد ناصر قدم القمحي

من ابن محمد الكبيسي تولد سنة ١٩٤٠ بيادؤم فرد _____ الشيعه تولد سنة ٢٠٤٢ بحدرور ثرائليسف

رقم ٢٤٥١ تاريخ ١٢/١١ _____ تيادوته ٠ اقم واذن تعوفياي .

وبعد اطلاعنا على قيود السجل العقاري قررا بالاتفاق التام والرضى المتبادل امام شهود التعريف المذكورين اعلاه ، ما يأتي

ملاحظة عامة — على رئيس المكتب الماردن ان يضرب بالمسير خطا تسمر نا على كل بياض مفروغ يبقى في صفحات عنده بعد ترتيب

(١) مكان استعمال البند (٢) الاسم والشهرة ولسم الأب والجنس وسنة الولادة حسب تذكرة : الهوية ، وعل الاثنان ورقم تذكرة : الهوية.

*Khaled Kabbur*

*Wael M. Amer*

*free*

١١/١٣

ثانياً: صرح الفريق الثاني المذكور آنفاً بقبوله شراء كامل القسم ١٥٠ من تنظيم سيارات ...

ثالثاً: صرح الفريقان المتعاقدان بان هذه الصفقة قد تمت لقاء مبلغ قدره خمسة وثلاثون مليون ليرة لبنانية اقر الثاني بقبضه ____ من اصل ٢٤٠٠ سهم يمثل المفروق المشار اليه من الثاني حال عقد، نقداً وعداً.

شروط خصوصية:
١: ...

وقد طلب الفريقان المتعاقدان ان تسجيل هذا العقد في السجل العقاري يبدأ ان سرر عنه نسختان رقمها المتعاقدان (١) والمتعاقدان المرفان (١) يحضوري وبعد ان تلي علناً علماً عليها مضمون النسختين. وقد افهم الطرفان المتعاقدان بان هذا العقد لا يكتسب البينة التنفيذية الا بعد مصادقة امين السجل العقاري عليه ____

وقد ابرز المتعاقدان وصلاً من صندوق الخزينة في ____ مؤرخاً في ____ رقم ____ مشعراً بدفعها الرسوم المترتبة على هذا العقد وقدرها ____

المتعاقدان

..... الفريق الثاني ..... الفريق الاول

الشاهدان المرفان

النظار الاول

حرر في ____ سنة ____ بتاريخ ____

مدير المكتب المارن

استناداً لنص المادة ٣ من قانون تنظيم مهنة الخبرات وتم ٤٢ تاريخ ١٩/ ٢ / ٩١ اشرفي

رسم الصندوق التعاوني وصندوق نقابة المارين

كاتب العدل

١٣/١٣

(١) اذا كان المتعاقدان او اسدها يجهل كتابة امضائه فتطبع بصمة شنصر يده اليمنى. اما المرفان فيجب ان يرقما امضاءهما كتابة

**K**



مكتب معاون

رقم السجل

رقم محضر العقد

Rene moawad

Elias el-murr

الجمهورية اللبنانية

مديرية الشؤون العقارية

أمانة السجل العقاري

عقد بيع ممسوح

| القسم | العقار | المنطقة العقارية | أصحاب الحق | المنتفعون | الحصة من أصل ٢٤٠٠ |
|---|---|---|---|---|---|
| | ١٧١٧ | قرنة شهوان | معالي الوزير الاستاذ الياس بو ملهب المر | اميل ن معوض (رينه اميل معوض) | ٢٤٠٠ سهم رقبة / ٢٤٠٠ سهم استثمار |

محضر عقد

في يوم... الجمعة.. الواقع في.. الرابع عشر...... من شهر.. شباط...... سنة ألفين وثلاثة

حضر أمامي انا منصور الشلفون الكاتب العدل في برج حمود

بحضور

الياس وهيب بو ملهب اللبناني مواليد بهريه سنة ١٩٦٥ والمقيم فيها سجل ٢

المحامي روني كامل اللبناني مواليد العذرا سنة ١٩٧١ والمقيم فيها سجل ٤٠

حضر

**الفريق الأول:** معالي الوزير الاستاذ الياس ميشال المر اللبناني الممثل بوكيله المحامي شارل سليم الحداد اللبناني مواليد غزير سنة ١٩٥٨ والدته سلوى سجل ٢٧٧ غزير ومقيم فيها بموجب وكالة مصدقة لدى كاتب عدل عين الرمانة الاستاذ جوزيف عبد الله برقم ٢٠٠٣/٤٢٥ تاريخ ٤ شباط ٠٣ ٢٠.

**الفريق الثاني:** رينه اميل معوض اللبناني مواليد زغرتا سنة ١٩٥٤ والدته كوزيت ساجل ٢٩ الصليب الجنوبي زغرتا ومقيم فيها بالاصالة عن نفسه وبولاية الجبرية عن ابنته اميل جورج صايغ

رينه معوض اللبناني القاصر عن درجتي الرشد والبلوغ المولود سنة ١٩٨٩.

٢/٥/٢٧

½

وبعد اطلاعهما على قيود السجل العقاري قررا بالاتفاق التام والرضى المتبادل أملاه
شهود التعريف المذكورين أعلاه ما يأتي :

**أولاً** : أن الفريق الاول المذكور أعلاه بعد أن ابرز شهادة قيد اثبت بموجبــه ملكيتـــه لكــامل
٢٤٠٠ سهم في العقار رقم ألف وسبعمائة وسبعة عشر من منطقة قرنة شهوان العقاريــة
المحتوي وفقاً لشهادة القيد.

**ثانياً** : صرح الفريق الاول المذكور بأنه باع من الفريق الثاني المذكور بيعاً تاماً قطعياً كامل ٢٤٠٠ سهم في
رقبة العقار رقم ألف وسبعمائة وسبعة عشر من منطقة قرنة شهوان العقارية لاميل رينـــه
معوض وكامل ٢٤٠٠ سهم في استثمار هذا العقار لرينه اميل معوض.

**ثالثاً** : صرح الفريق الثاني المذكور أعلاه بقبوله شراء كامل ٢٤٠٠ سهم في العقار رقم الــف
وسبعمائة وسبعة عشر من منطقة قرنة شهوان العقارية.

**رابعاً** : صرح الفريقان المتعاقدان بان هذه الصفقة قد تمت لقاء مبلغ وقدره مليار وخمسمائة مليون
ليرة لبنانية اقر البائع بقبضه من الشاري حال عقده نقدا وعداً .
صرح الفريقان المتعاقدان بان الثمن المذكور هو الثمن الحقيقي والفعلي لهذا البيـــع وعلى
مسؤوليتهما وهو يشمل الرقبة والاستثمار معاً كما فوض الفريق الثاني المحامي روني كامل للاحقـــة
هذا العقد ودفع الرسوم واستلام سند الملكية.

وقد طلب الفريقان المتعاقدان تسجيل هذا العقد في السجل العقاري بعد أن حرّر عنه ثــلاث
نسخ وقعها المتعاقدان والشاهدان بحضوري وبعد أن تلي علنا عليهما مضمون النسخ قـــد افهـــم
الطرفان المتعاقدان بان هذا العقد لا يكسب الصيغة التنفيذية إلا بعد مصادقة أمين السجل العقـــاري
عليه وقد ابرز المتعاقدان وصلا من صندوق الخزينة في جونيه مؤرخــا في٢٠٠٤/...../.......رقم
/٥٠.٢٠.٠٦/ مشعرين بدفعهما الرسوم المتوجبة.م...........................على هذا العقد مبلـــغ
وقدره ...........ل.ل ٧٨،٨٥٦... .

**شاهد ثاني**    **شاهد اول**    **الفريق الثاني**    **الفريق الاول**
بالوكالة المحامي

١٤ شباط ٢٠٠٣
الجمهورية اللبنانية
وزارة العدل
Mansour Ezzat Challoub

**L**

OCT 21 2004 14:20        000000        000000        PAGE.05

بسم الله الرحمن الرحيم



**CENTRAL BANK OF IRAQ**
المديرية العامة للاستثمارات



العدد: **Ref.NO.:** ٥/٢٩٧

التاريخ: **Date:** ٥/٩/٢-٤

الى : / بنــك المدينـــة / بيـــروت
عنايـــة السيد فاسان زريفة المحترم

م/ ترتيبــــات مصرفية
⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

تحية وبعد •

يســر هذا البنك باقامة علاقات مصـرفية معكم ، ونرفق لكم طيا الترتيبـــات المصـرفية
بعد توقيعهـا من قبلنا ونذكركم بان تشخيل الحسـابات لـن يتم قبل اللقاء مباشـرة
لتنسيق العمل و الية التشغيل و نفضل اللقاء معكم في بغداد •

للتفضل بالاطلاع و اعلامنــا رايكم و تقبلوا فائق الاحترام و التقديــــر

المديـر العــام للاستثمـارات وكالـة

اسـرار عبد الحسين محمد

BANK CENTER:RASHED ST. BAGHDAD - IRAQ
TEL: 8884115 - 8865171 P. O.Box 64
TELEX: 212203 - 212558 - 212296 CN BK IK
e-mail -<cbi@nleciraq.net>

مركز البنك  شارع الرشيد- بغداد -العراق
هاتف : ٨٨٦٥١٧١-٨٨٥٤١١٥- ٨٨٨٤١١٥
ص . ب : ٦٤ - تلكس : ٢١٢٢٩٦-٢١٢٥٥٨- ٢١٢٢٩٦
البريد الالكتروني  e-mail -<cbi@nleciraq.net>

*English Translation of Document Originally in Arabic*

Central Bank of Iraq

Ref: 692/5
Date: 9/5/2001

Bank Al-Madina

Attention: Vincent Zreikah

The Central Bank of Iraq is pleased to start a banking relationship with you. We attach herewith the banking terms that have been signed by us.

However, we remind you that the bank accounts will not be operated until we meet in person to discuss the work procedure and mechanism. We prefer the meeting to be held in Baghdad.

Please inform us your opinion of the same.

Acting General Manager / Investments
Asrar Abdul Hussein Mohammad



بنـــك المــدينـــة
**BANK AL-MADINA**

Capital L.L. 45.540 Billion fully paid B.L. 105 - C.R.B. 46164

M/S CENTRAL BANK OF IRAQ               26 SEP 01

DIRECTORATE GENERAL OF INVESTMENT

BAGHDAD — IRAQ


DEAR SIRS,

    THIS IS TO INFORM YOURSELVES

THAT YOUR "SECRET ACCOUNTS" WITH

OUR BANK HAVE BEEN ASSIGNED THE

FOLLOWING NUMBERS:

    A/c NO. 12070.01 FOR USD

    A/c NO. 12070.02 FOR EUR

    WE LOOK FORWARD TO START A

NEW SUCCESSFULL RELATIONSHIP WITH

YOUR ESTEEMED BANK.

SINCERELY YOURS



VINCENT J. ZAKIFEH

هاتف: ٣٥٣٨٧٣-٣٥١٢٩٨-٣٥١٢٩٦ تلكس: ٤١٠٦٦ بانكام-ص.ب:٧٢٢١-١١٣بيروت-لبنان
TEL: 353873 - 351298 - 351296 TELEX: 41066 BANKAM LE - CABLE: BANKAM. - P.O. BOX: 113-7221 BEIRUT - LEBANON





بسم الله الرحمن الرحيم

**CENTRAL BANK OF IRAQ**
البنك المركزي العراقي

المديرية العامة للاستثمارات

Ref.NO.: ١٠٨/٥   العدد:

Date: ٢٠٠٢/١/١٨   التاريخ:

– سري للغاية –

الى :

بنك المدينة – بيروت
عناية السيد فنسنت زريفة المحترم

م/ حساباتنا معكم

تحية طيبة ،

يرجى تفضلكم بأعتماد البريد السريع أو العادي بمراسلاتكم الخاصة بحساباتنا معكم
وعدم اللجوء الى وسيلة الفاكس أو التلكس لاي سبب كان .

شاكرين تعاونكم معنا ٠٠٠ مع التقدير

المدير العام للاستثمارات وكالة
حسن خزعل حسين

*Instruction to use only
courier services or normal mail for
correspondence / Never by Fax or
telex.*

*هدى))*

*signed by*
*Hussein Khazal Hussein*

BANK CENTER:RASHED ST. BAGHDAD - IRAQ
TEL: 8884115 - 8865171 P. O.Box 64
TELEX: 212203 - 212558 - 212296 CN BK IK
e-mail -<cbl@nisciraq.net>

مركز البنك: شارع الرشيد - بغداد - العراق
هاتف : ٨٨٦٥١٧١ - ٨٨٨٤١١٥
ص . ب : ٦٤ - تلكس : ٣٤١٢٩٦ - ٢١٢٢٠٣ - ٢١٢٥٥٨
البريد الالكتروني < cbl@nisciraq.net > e-mail

Attention : Mr. Dave
or : Mr. Tom

**بنك المدينة**
**BANK AL-MADINA**

*Interoffice memorandum*
مذكرة داخلية

بيروت في ٢٠٠٢/٢/١٨

البنك المركزي العراقي
المديرية العامة للاستثمارات
شارع الرشيد – بغداد
العراق

تحية وبعد ،

عطفاً على كتابكم رقم ٨٩/٥ تاريخ ٢٠٠٢/١/٢٦ وبناءً لتعليماتكم الكريمة قمنا
بتجديد تثبيت الوديعة البالغة ٥,٠٠٠,٠٠٠ د.أ. ( فقط خمسة ملايين دولار اميركي
لا غير ) بنفس الشروط السابقة من تاريخ ٢٠٠٢/٢/١٦ ولغاية ٢٠٠٢/٥/١٥
بفائدة ٤% .

ونفيدكم علماً بأننا حافظنا على نفس سعر الفائدة الذي كان مطبقاً في الفترة السابقة
ولم نعمد الى تخفيضه بالرغم من تدني سعر " لايبور " الى ما دون ٢% .

ان الفترة السابقة للوديعة امتدت من ٢٠٠١/١١/١٩ لغاية ٢٠٠٢/٢/١٥ واستحقت
لصالحكم فائدة بلغت ٤٨,٨٨٨,٩٠ د.أ

قمنا بتاريخ ٢٠٠٢/٢/١٨ بتحويل قيمة هذه الفائدة من حساب الوديعة الى حسابكم
الجاري كما هو متفق عليه .

وتفضلوا بقبول فائق الاحترام

*English Translation of Document Originally in Arabic*

2/18/2002

The Central Bank of Iraq
General Administration of Investments
Rasheed Street – Baghdad
Iraq

     With reference to your letter No 5/89 dated 1/26/2002 and as per your instructions, we have renewed your time deposit of $5 Million under the same previous terms dated 2/16/2002 till 5/15/2002 at an interest of 4%.

                          Signed by Al-Madina Bank
                          Iman Daher / Vincent Zreikah

OCT 21 2004 14:18   000000   PAGE.01

*Attention : Mr. Dave*
*or : Mr. Tom*

ترتيبات مصرفية

---

الطرف الاول  : البنك المركزي العراقي

الطرف الثاني : بنك المدينة ش م ل لبنان

اتفق الطرفان على قيام الطرف الثاني بفتح حساب /حسابات بعملة قابلــه للتحويل لصالح الطرف الاول يتم تشغيله / تشغيلها وفق الاســـس والشـــروط التاليـــة :-

١- يتم تشغيل وتحريك الحساب بموجب تخويل خطي موقع من قبــل مخولين اثنين بالتوقيع حسب نشرة التواقيع النافذة للطرف الاول ومعزز بالرقـــم السري المتفق عليه وفي حالـ الضرورة يتم تحريك الحساب والدفع بواسطة الفاكس أو التلكس معزز بالرقم السري المتفق عليه .

أي تعليمات أو اوامر دفع صادرة عن الطرف الاول لا تكون فعالة وساريــة المفعول مالم تكن معززة بالرقم السري المتفق عليه .

٢- يكون رصيد الحساب الجاري دائنا وخاضعا للفائدة الدائنة بسعر ( لا يــــبور لشهر واحد ) المعلن من قبل دويجة بنك - لندن في اول يوم عمل من الشهر المعني . تحسب الفوائد شهريا ، وتضاف الى الحساب المشار اليه في نهايــة كل شهر .

٣- في حال وضع وديعة بأسم الطرف الاول لقاء التزامات متفق عليها مسبقــا يكون سعر الفائدة المطبق على الوديعة ( لا يبور ) المعلن من دويجــــة بنك - لندن ويتم تحديد الفترة المعتمدة لسعر الفائدة عند وضع الوديعـة باسم الطرف الاول ولكل حالة على حدة .

٤- تتم تغذية الحساب باعتماد الطرق التاليـــــة :-

أ- عن طريق أيداع مبالغ نقدية على أن تقيد في الحساب خلال يومي عمل

ب- عن طريق تحاويل من المصارف الاخرى .

جـ- عن طريق المقاصة الداخلية بين البنوك المحلية .

د - عن طريق أي مراسل خارجي مختار دون المرور عبر المقاصصات الدولية و /أو أي بنك أمريكي أو خارج أمريكا على أن يتم الاتفاق على الآلية مسبقا ولكل حالة على حدة .

٥- في حالة تغذية الحساب من أي مصدر كان بناء على طلب الطـــــرف الاول يصار الى أعلام الطرف الثاني بتنسيق عملية التغذية.

٦- أن الطرف الثاني على أتم الاستعداد لاصدار كفالات وخطابات ضمان وكتـب اعتمادات مستنديه مثبتة وغير مثبتة بناء على طلب الطرف الاول وضمـن الشروط التي يتفق عليها الطرفان .

٧- يتعهد الطرف الثاني بتنفيذ تعليمات وأوامر الطرف الاول المرسله آليـــــة والمستوفيه للشروط الواردة بهذه الترتيبات بنفس تواريخ الاستحقاق المحددة من قبل الطرف الاول . وفي حالة عدم ادراج تواريخ الاستحقاق في أوامـــر الطرف الاول يتم تنفيذ هذه الاوامر خلال يومي عمل من تاريخ استلامه لتلك الاوامر .

٨- يعتمد مبدأ الـ (Back Value) بخصوص الحركات الدائنة والمدينـــــة على الحساب نتيجة الخطأ والسهو من قبل الطرف الثاني وذلك لضمـــان حق الطرفين في الفائدة الدائنة والمدينة اعتبارا من تاريخ وقوع الخطأ أو السهو.

٩- يقوم الطرف الثاني بأرسال كشف تفصيلي لحركة الحساب كشفا تفصيليـا بالفائدة المتحققة وسعر الفائدة المعتمد في نهاية كل شهر يعنـون الـــــى الطرف الاول بالبريد الخاص السريع مع ارسال الاشعارات الدائنة والمدينة للمعاملات المنفذة على الحساب .

( ٢ - ٣ )

000000

١٠- يقوم الطرف الثانــــي  باعلام الطرف الاول  بالبريد السريع يوم استـــلام
أيداع  أو ايداعات لحسابه دون علم مسبق للطرف الاول  بها .

١١- أن الطرف الثاني سيحرص على عدم ذكر اسم العراق أو اسم الطرف الاول
في  أي من العمليات الخارجية الصادرة عن الطرف الثاني لدى تنفيـــــذه
العمليات الموجهة من الطرف الاول  كاوامر الدفع ،اعتمادات خطــــــاب
ضمان .. ألخ  واعتماد المقاصات الداخلية في تنفيذ أوامر الدفع كلما  أمكن
ذلك تجنبا للمقاصات الدولية .

١٢- لا يستوفي  الطرف الثاني أية  عمولات على دفع المبالغ من الحساب أو التي
تقيد أيرادا فيه أو أجور البرقيات أو مصاريف البريد حول الحساب كمـــا
لا يستوفي أي مصاريف على أدارة الحساب .

١٣- تعفى عوائد الحساب من الضرائب وفي حالة فرضها من قبل سلطات بلــد
الطرف الثاني فأنّه يتحملها هـــــو .

١٤ - يمكن أعادة النظر بهذه الترتيبات كلما وجد أحد الطرفين ضرورة لذلــك
ويجوز تعديل هذه الترتيبات باتفاق تحريري بين الطرفين .

١٥- تكون هذه الترتيبات نافذة اعتبارا من تأريخ التوقيع عليها .



عـ . البنك المركزي العراقي

عـ . البنك

( ٣ - ٣ )

*English Translation of Document Originally in Arabic*

## **Banking Terms**

First Party:     The Central Bank of Iraq
Second Party: Bank Al-Madina SAL, Lebanon

The two parties agreed that the second party will open accounts in currencies that could be exchanged in favor of the first party. These accounts will be operated as per the following terms and conditions:

1. The accounts will be operated by a written documents signed by two authorized signatories in accordance with the official signatory list of the first party together with the agreed secret account number. Only in cases of emergency, the account will be operated and paid from by fax or telex while citing the agreed upon secret account number.

2. The balance of the current account will earn an interest of one-month LIBOR as announced by Deutsche Bank – London on the first business day of the relevant month. The interest will be calculated monthly, to be added to the relevant account at the end of each month.

3. In the case of a time deposit in favor of the first party in accordance with agreed upon commitments, the applicable interest rate will be LIBOR as announced by Deutsche Bank – London. The interest rate will be applicable for a period to be defined for each time deposit on a case by case basis.

4. The deposits into the account will come via any of the following ways:

   a. Cash deposits to be credited within two business days
   b. Bank transfers from Jordanian banks
   c. Via domestic cleaning from Lebanese banks
   d. Through any correspondent outside Lebanon without passing through international clearance houses and/or any American bank or outside the USA provided the procedure is agreed upon on a case by case basis.

5. In case of deposits into the account from any source as per the first party's instructions, the second party will be informed of the deposit's details.

6. The second party will be always ready to issue guarantees, letter of guarantee, confirmed and unconfirmed letter of credit as per the first party's instructions and in accordance with the conditions that are agreed upon by both parties.

7. The second party confirms that they will execute all of the instructions and orders given by the first party in accordance with the conditions given herewith, at the value dates as specified by the first party. In case the first party had not specified

the value date, the instructions would be executed within two days from the date of instructions receipt.

8.  The "Back Value" principle will be used for the debit and credit transactions that had been executed in error by the second party. This is in order to guarantee fairness to both parties in relation to the debit and credit interest since the date of the unintentional error.

9.  The second party will send a detailed statement of account at the end of each month detailing the interest rate and the amount of interest. This will be addressed to the first party by special express mail enclosing all the account debit and credit transactions vouchers during the month.

10. The second party shall inform the first party by express mail immediately upon receipt of a deposit or deposits into the first party's account and which the first party had not been informed about.

11. The second party shall ensure not mentioning the name of Iraq or the first party's name in any of the foreign transactions to be issued by the second party at the request of the first party such as payment requests, letters of guarantee, etc... The domestic clearinghouses shall always be used while executing payment instructions whenever possible. This is in order to avoid the international clearinghouses.

12. The second party shall not earn commissions for any payments from the account, or for any revenue on the account or for any relevant postage or cable fees, and will not charge any expenses to the account.

13. The income on the account shall not pay any taxes. In case these taxes are imposed by the second party's country, the second party shall pay the same.

14. All these terms could be revised should any of the two parties feel it necessary. Accordingly, such terms shall be amended in writing by the two parties.

15. These terms shall be in effect effective the date of signature.

For the Central Bank of Iraq                     For Bank Al-Madina

Hassan Khazal Hussein                   Rana Koleilat          Vincent Zreika

**M**

# RIHAN & OBEID CENTER FOR JURIDICAL TRANSLATION

* SWORN AND ACCREDITED TRANSLATORS * LEGALIZATIONS ACCOMPLISHMENT * TYPING * CONFERENCES *
Union Affiliation N° 41/44      * ПРИСЯЖНЫЙ ПЕРЕВОДЧИК *      Document N° ............

A- Dr. Mounif HAMDAN brought the following actions:

1- Fraud and Falsification of HE The Governor of Bank of Lebanon Signature, against **Rana KOLEILAT**, and her maternal uncle wife, **Joumana AYYAS**. Trial date: November 29, 2004

2- 10 Checks having the value of 10 millions dollars against **Ihab HAMIEH**, who is a money changer working for Rana. Trial Date: November 19, 2004

3- Fraud and receiving checks pursuant to an assignment made in favor of Dr Adnan ABOU AYYACHE at Credit Agricole Indosuez, Switzerland, trial date: October 27, 2004.

4- Fraud and selling of real estates for the second time: Rana KOLEILAT signed an assignment regarding all of her properties in favor of Dr Adnan ABOU AYYACHE. After said assignment, she sold all the same real estates to third parties. The trial date is not fixed yet.

5- A Fraud action against her maternal aunt husband **Ismail SARWAT**. The trial date is not fixed yet.

6- Falsification and theft of monies, out of Dr Adnan ABOU AYYACHE accounts. Said theft amounts 80 Millions Dollars. The trial date is: October 20, 2004

7- Fraud, falsification and misappropriation of stocks, amounting 16 millions of Dollars from " BLOM, Banque du Liban et d'Outre mer" to " Al Madina Bank" thus being from Dr Adnan ABOU AYYACHE to Rana KOLEILAT. trial date: October 20, 2004.

8- Fraud, Falsification and Money misappropriation of a sum amounting 100 millions of American dollars. Trial date: October 20, 2004.

9- Falsification and signature on documents regarding Dr Adnan ABOU AYYACHE, against Rana KOLEILAT. Trial date: November 04, 2004.

10/19/2004

**A-Me Jean Azzi and Me Georges Nakhleh brought the following actions:**

1- An action against Taha Bassel and Abdul zahim and Rana Koleilat, for the crime of funds theft, registration of real estates and cars which value exceeds 200 millions of American Dollars.

2- An action against Fadi Soboh, Taha Koleilat and the spouse of Fadi Soboh, whose crime is fraud and funds misappropriation, while being registered under the name of Fadi Soboh and Mariam Soboh.

3-An action against Quatro Rent a car, to attach a Provisional seizure, and to transform it afterwards to a definitif seizure.

4-An action against Rana Koleilat to seize the movables for which she signed an assignment in favor of Dr Adnan Abou Ayyash.

5-An action brought by Dr Adnan Abou Ayyash in order to nominate a judicial receiver for all the Koleilat family movables.

6-An action against attorney at-law, Abdallah Rafei for having committed defamation and notoriety against Dr. Adnan Abou Ayyash.

7-An action against Taha Koleilat and Khodor Mulla and employee for funds smuggling in the name of Khodor Mulla.

8-An action against Olympic Football Club to attach a mention on all the club's assets since its owner is Taha Koleilat.

9-An action against Alaa Baroun an employee at the Allied Credit Bank, who helped Rana in smuggling twenty five millions of American Dollars.

10-An action against Rana attorney at-law, Me Elie Salwan, who is claiming Rana to pay him his dues. Accordingly he requests to attach a mention on Rana all properties and funds, thus we attack him with Fraud.

11-An action against an employee at Al Madina Bank, Joumana Abdul Baki who used to help Rana in smuggling money and transfer it abroad. Thus Rana bribed her with a real estate of 3 millions American Dollars.

10/19/2004

**B-Actions Filed by Me Francois Daher:**

1-An action against Rene Emile Moawad, a friend of Rana, to whom she gave around 25 millions American Dollars out of Dr.Adnan Abou Ayyash and the depositors monies. Thus we filed an action against him for fraud and obliged him to give back the monies of funds.

**C-Actions filed by Me Ziad Sardouk:**

1-Dr.Ziad Sardouk summoned 140 parties, to whom Rana gifted apartments, plots and lands, and chalets, which value exceeds 70 millions American Dollars. Therefore we file actions them all "Formally" and obliged them all to give back the plots. Yet, all of the latter are friends and relatives of Rana.

2-Dr.Ziad filed an action against Bilal Sayegh for money laundering, and misappropriation of the depositors and Dr Adnan Abou Ayyash funds, which value is of 500 millions of American Dollars.

**Remark:** All the actions filed by Me Jean Azzi, Me Georges Nekhleh, Me François Daher and Me Ziad Sardouk, are referred before appeal or under form defenses or waiting for their trial to render verdicts. Yet judgments shall start to be rendered after November 2004.

10/19/2004

# N

**Date 10/July/2003**

**Decision Number**: 1/18/2003 (1)

The Special Investigation Commission of the Central Bank of Lebanon ("The Commission"), and after reviewing the decision of the Higher Banking Commission Number 2/10/03 dated 8/July/2003 which stipulates the referral, of the persons responsible for the management of the Bank Al Madina and United Credit Bank, to the "Commission",

And after reviewing the whole file and the reports of the Banking & Control Commission (BCC) and in particular the report # 14/13 dated 20/May/2003 and the………………………
………………………………………………………………………………………………………………

and after examining its decisions # 20/3/2003 and # 20/3/2003(1) & (2) dated 6/February/2003 stipulating the lifting of the banking secrecy of all accounts and assets of the persons listed in those decisions and blocking it permanently, and after examining its decision # 1/6/2003 dated 19/March/2003 which retracted (rescinded) the previous decisions of lifting bank secrecy and blocking the accounts and assets (i.e. # 20/3/2003 and (1) and (2)) in view of new developments related to the matter,

and as it appears from the whole file and in particular the decisions referred to above and…………………………………………………………………………………………………………
………………………………………………………………………………………………………………
**………., that there are serious evidence to the fact that the following individuals:**

A list of 21 names including:
- Rana Abdelrahim Koleilat
- Taha Abdelrahim Koleilat
- Bassel Abdelrahim Koleilat
- Bilal Sayegh
- Fadi Sobh
- Ihab Hamieh
- Fouad Kahwaji
- Iman Daher
- Joumana AbdelBaki
- Ahmad Salem Husseini
- Alia Haroun
- ……………
- ……………
- Etc………………

have committed, individually or jointly and after the issuance of the **Law # 318/2001 (i.e. Lebanese Money Laundry Law)**, the theft and robbery of the money of Bank Al Madina and United Credit bank in the amounts of **hundreds of Millions of US Dollars** in addition to other amounts in Lebanese Pounds, and effected **fictitious accounting entries** by means of **forged documents** to cover up for the theft and robbery, and also carried out transactions that led to encumbering Bank Al Madina and United Credit Bank with **liabilities without recording it in the banks' books**,

1/4

and as it became evident from the sequence of events that the **"developments"**, on which the "Commission" based itself to rescind and retract its previous decisions of lifting bank secrecy and blockage of accounts, **turned out to be false and untrue,** and since the actions of above individuals, namely the **criminal** theft and robbery of the banks' money **fall under section # 5 of Article # 1 and the Article # 2 of Law # 318/2001 (i.e. Lebanese Money Laundry Law)** and also fall under section #2 of article # 638 of the Lebanese Criminal Code,

Therefore, and after due discussions,

**and as per Section # 4 of Article # 6 and Sections # 3&4 of Article # 8 of Law # 318/2001**,

It was unanimously decided to:

1- Lift the bank secrecy, towards the legal authorities concerned, of all the accounts related directly or indirectly, individually or jointly with any other person, of the persons listed above (same 21 names) in all Lebanese banks and blocking those accounts permanently.
2- Requesting the secretary of the "Commission" to give official notice of this decision to:
   a. State Prosecutor General (Adnan Addoum)
   b. Higher Banking Commission (via its president-Riad Salameh)
   c. All Banks
   d. Concerned related individuals

Decision taken on 9/July/2003

President of the Special Investigation Commission
Governor of The Central Bank of Lebanon
<u>Signed:</u> Riad Salameh


CC: Secretary of the "Commission"

O



**Central Bank**
*Governor Riyad Salameh*

**Banking Control Commission**

**Bank AL-Madina (United Credit Bank)**

**Family and Associates of Rana Koleit**

**Bassel Abdelrahim Koleilat**

**Taha Abderlrahim Koleilat**

**Joumana Mohamad Ayyas**

**Rene Moawad**

**Ibraham Abu-Ayyash**
*Chairman- General Manager*

**Dr. Adnan Abu-Ayyash**
*Honorary Chairman- General Manager*

**Rana Koleilt**
*Advisor to General Manager*

**Wael Abu Shakra**
*External Auditor*

**Rashid Najjar**
*Advisor to Chairman, General Manager*

**Antione Abdul Nour**
*Advisor to General Manager*

**Elie Ghanem**
*Assistant General Manager*

**Walid Nassif**
*Deputy General Manager*

**Paul Choufani**
*Deputy General Manager*

**Michel El-Helou**
*Bank Attorney*