UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ADNAN ABOU AYYASH,

                              Plaintiff,

        v.

BANK AL-MADINA, UNITED CREDIT BANK, RANA ABDELRAHIM KOLEILAT, TAHA ABDELRAHIM KOLEILAT, BASSEL ABDELRAHIM KOLEILAT, RENE MOAWAD, JOUMANA MOHAMAD AYYAS and JOHN DOES 1-10,

                              Defendants.

04 Civ. 9201 (GEL)

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S EX PARTE MOTION FOR EXPEDITED DISCOVERY AND ORDER OF ATTACHMENT**

Daniel H. Weiner (DW 6140)
David G. Liston (DL 2348)
Melissa R. Chernofsky (MC 9673)
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004
(212) 837-6000

Attorneys for Plaintiff

**Preliminary Statement**

Plaintiff Adnan Abou Ayyash ("Dr. Ayyash" or "plaintiff") submits this memorandum in support of his *ex parte* motion pursuant to Fed. R. Civ. P. 26(d) and 45 to serve expedited discovery requests on non-party banks and financial institutions located in the State of New York (collectively, the "New York Banks") concerning the location of defendants' assets and transactions underlying defendants' fraud. Dr. Ayyash also seeks prejudgment attachment pursuant to Fed. R. Civ. P. 64 of any assets of defendants located through that non-party discovery in an amount up to his claimed damages in this suit.

Dr. Ayyash will suffer irreparable injury if he is not allowed limited non-party discovery regarding defendants' assets in this District while his effort to serve the summons and complaint on defendants in Lebanon continues to wend its way through diplomatic channels. As set forth below, Dr. Ayyash reasonably believes that defendants will attempt to remove their assets, if any, from the jurisdiction, thereby frustrating any potential judgment against them. For this reason, plaintiff also seeks prejudgment attachment of any assets located through the proposed discovery requests to be served on the New York Banks.

**Statement of Facts**

**The Complaint**

Dr. Ayyash commenced this action on November 14, 2004, asserting claims for over $1 billion in damages against corporate defendants Bank Al-Madina and United Credit Bank (collectively, the "defendant banks") and individual defendants

Rana Abdelrahim Koleilat ("Rana"), Taha Abdelrahim Koleilat ("Taha"), Bassel Abdelrahim Koleilat ("Bassel"), Rene Moawad ("Moawad") and Joumana Mohamad Ayyas ("Ayyas") (collectively, the "individual defendants") under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(b), (c), (d), § 1964(c) and the laws of New York State.

These claims arise out of a complex international scheme masterminded by Rana and executed by the individual defendants to defraud plaintiff, who is the majority owner of the defendant banks, and other depositors of the defendant banks. As alleged in the complaint, the individual defendants conducted the affairs of the defendant banks through a pattern of racketeering activity, including wire fraud, money laundering, forgery and embezzlement, thereby acquiring control of the defendant banks and siphoning money from them and the accounts of their depositors, including plaintiff. (Compl. ¶¶ 20−60.)

On February 18, 2005, plaintiff applied to the Court for issuance of a letter of request for service of process in Lebanon through letters rogatory. The Court granted that application, issuing the letters rogatory on February 24, 2005. Plaintiff's counsel then had the signed documents translated into Arabic, as required by law, before conveying the letters rogatory to the United States Department of State. The State Department has begun the process of transmitting the letters rogatory to Lebanon

through diplomatic channels, and has indicated to plaintiff that service is not likely to be effectuated in less than six months to a year.  (Chernofsky Decl. ¶ 3). [1]

**This Application**

A party must ordinarily await the Rule 26(f) conference to serve discovery.  This conference does not usually take place until after an answer or other responsive pleading has been served and, at the earliest, it does not occur until after service of the summons and complaint has been effectuated.  Because service will not occur for six months to a year, Dr. Ayyash cannot pursue discovery in that time.

Defendants' actions strongly suggest their unwillingness to satisfy a judgment against them in the United States.  Plaintiff has reason to believe that the individual defendants may take action to remove their assets from the U.S. to avoid satisfying a potential judgment against them.  (*See* Affidavit of John Walzer, dated June 4, 2005 ("Walzer Aff."), at ¶ 8.) While defendants have not yet been served with the summons and complaint, recent publicity surrounding this action may have alerted them to its existence, leading them to attempt to remove assets from the jurisdiction.

Plaintiff's concern that defendants will move their assets is heightened by the current chaotic political climate in Lebanon.[2]   Defendants are believed to have close ties with Syrian officials and pro-Syrian forces inside Lebanon.  (*See*  Walzer Aff., Ex. 1 at 5-6, 15-17)  The individual defendants' relationships with these officials have

---

[1.] References to "Chernofsky Decl." are to the declaration of Melissa R. Chernofsky, sworn to June 7, 2005 and submitted herewith.

[2.] *See*, "Syria Ends Military Presence in Lebanon" New York Times, April 26, 2005; "Cheers, Fears as Syria Exits Lebanon:  International Pressure Forces Out Military, But Questions Linger" San Francisco Chronicle, April 27, 2005; "Journalist Who Criticized Syrian Presence Is Killed in Lebanon"  New York Times, June 2, 2005.

apparently protected them from prosecution in Lebanon.  (*Id.*)  However, with the withdrawal of Syrian forces, defendants are believed to be on the run, and therefore likely to consolidate and begin drawing on their assets.

The individual defendants may hold assets in accounts in their own names, or in the names of the defendant banks.  Accordingly, Dr. Ayyash seeks limited expedited discovery for the purposes of identifying the individual defendants' assets at the New York Banks and attempting to trace defendant's improper transactions.  (A copy of plaintiff's proposed discovery requests is attached to the Chernofsky Declaration as Exhibit 1.)

Dr. Ayyash also seeks to attach any assets of defendants in New York identified through non-party discovery, up to the amount he seeks in damages in this action.  Attachment is proper because plaintiff is likely to succeed on his claims; the individual defendants and defendant banks are all non-residents located outside the District; and plaintiff seeks damages in this action in excess of any known counterclaims.  Accordingly, under Fed. R. Civ. P. 64 and New York C.P.L.R. Article 62, plaintiff's request for an order of attachment should be granted.

## Argument

I. **PLAINTIFF IS ENTITLED TO EXPEDITED DISCOVERY.**

Fed. R. Civ. P. 26(d) permits parties to seek discovery prior to the Rule 26(f) conference with leave of the Court.  While there is some divergence of view on the standard to be applied where, as here, a party seeks expedited discovery in aid of preliminary relief, recent authority suggests that a "good cause" standard is appropriate

in that situation. *See, e.g., Special Situations Cayman Fund, L.P. v. Dot Com Entm't Group, Inc.*, No. 03-CV-0811E(F), 2003 WL 23350128, at *1 (W.D.N.Y. Dec. 5, 2003); *Qwest Communications Int'l, Inc. v. Worldquest Networks, Inc.*, 213 F.R.D. 418, 419-20 (D. Colo. 2003). "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002). In considering the need for expedited discovery, the Court should also take into account the urgency of the requested discovery. *Entm't Tech. Corp. v. Walt Disney Imagineering*, Civ. A. 03-3546, 2003 WL 22519440, at *5 (E.D. Pa. Oct. 2, 2003).

Other courts – including ones in this District – have required a party requesting expedited discovery to demonstrate the following: (a) irreparable injury; (b) some probability of success on the merits; (c) some connection between the expedited discovery and the avoidance of the irreparable injury; and (d) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted. *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982) (referred to hereinafter as the "*Notaro* test"); *see Irish Lesbian & Gay Org. v. Giuliani*, 918 F. Supp. 728, 730 (S.D.N.Y. 1996) *(*applying the *Notaro* test*)*.

Here, plaintiff's application satisfies both the "good cause" standard and the *Notaro* test.

    **A.**    **Good Cause Provides The Correct Standard For Expedited Discovery In This Case.**

Courts have properly criticized the *Notaro* test on the ground that its more stringent standard befits requests for preliminary injunctions – where a defendant faces a decision on the merits prior to full development of the factual record in the case – but is inappropriate in the context of the timing of discovery. *See Entm't Tech.* 2003 WL 22519440, at *4 (rejecting *Notaro* test). Other courts have appropriately noted that Rule 26's concern with discovery timing is the orderly management of the case, not the rights of the parties in determining the case on its merits. *Semitool,* 208 F.R.D. at 276 (rejecting *Notaro* test and adopting "good cause" test).

Here, even if plaintiff could not yet show "irreparable injury," a preliminary injunction test is not appropriate where expedited discovery would facilitate case management and cause little or no injury to defendants.

### 1. Plaintiff Has Immediate Need for Expedited Discovery.

Dr. Ayyash seeks limited expedited discovery to locate defendants' assets in New York so that he can begin to trace the improper transactions executed as part of their racketeering scheme, and attach those assets in support of a potential judgment. If he is unable to locate and attach those assets, defendants may well not satisfy an eventual judgment against them. Plaintiff reasonably believes that the longer this action and the uncertain political situation in Lebanon continue, the more likely it is that defendants will hide their assets.

The requested discovery does not replicate the ultimate damages sought. Rather, it addresses a specific, independent harm that plaintiff will suffer without that discovery. Disclosure of information regarding defendants' assets in the State of New

York will aid in the administration of justice – the underlying purpose of Rule 26 – by allowing for the satisfaction of an eventual judgment on plaintiff's behalf. *See Semitool*, 208 F.R.D. at 276.

### 2. Defendants Will Not Be Prejudiced.

Plaintiff's requested discovery will not prejudice defendants. *See Entm't Tech.*, 2003 WL 22519440, at *5; *Qwest*, 213 F.R.D. 418 at 420. Here, plaintiff seeks to locate any assets held by defendants in the New York Banks and to attempt to trace defendants' improper transactions, a request that is limited in scope and imposes no burden on the defendants. This request calls for production by non-parties of a discrete set of documents that should be readily available.

Furthermore, the earlier timing of the discovery imposes no burden on defendants. The documents sought would normally be discoverable under Rule 45 following the preliminary conference. *See Brassco, Inc. v. Klipo*, No. 99 Civ. 3014 (RMB)(DF), 2004 WL 1385816, at *3 (S.D.N.Y. June 21, 2004) (enforcing subpoena *duces tecum* seeking bank accounts because the requested documents would show whether party engaged in improper transactions and their production would not be overly burdensome). Thus, expedited access poses no burden to defendants, as that information would have to be produced any way. *See Semitool*, 208 F.R.D. at 276. Accordingly, the benefits outweigh any prejudice to defendants and expedited discovery is appropriate.

### B.     The Requested Discovery Also Satisfies The *Notaro* Test.

Plaintiff's request for expedited discovery also satisfies the *Notaro* test.

#### 1.     Plaintiff Will Suffer Irreparable Injury Without the Requested Discovery.

Dr. Ayyash will suffer irreparable injury if he cannot collect a judgment against defendants.  "[I]rreparable harm is present if it appears that defendants intend[] to frustrate a money judgment by transferring assets in a way that makes the judgment uncollectible."  *Computerland Corp. v. Batac, Inc.*, No. 88 CIV. 8624 (SWK), 1988 WL 140816, at *4 - *5 (S.D.N.Y. Dec. 16, 1988) (holding that the plaintiff made the requisite showing under the *Notaro test*).  The Second Circuit has held that a party establishes irreparable injury by showing that a defendant will thwart "any judgment on the merits' by 'transferring. . .[its] assets out of the jurisdiction.'"  *In re Feit & Drexler, Inc.*, 760 F.2d 406, 416 (2d Cir. 1984) (quoting *Productos Carnic, S.A. v. Cent. Am. Beef & Seafood Trading Co.*, 621 F.2d 683, 686 (5th Cir. 1980)) (upholding District Court's finding of irreparable injury in grant of preliminary injunction where the defendant had engaged in "substantial efforts to hide and secrete assets.")

Plaintiff's fear that the individual defendants will remove assets from the United States in an attempt to avoid jurisdiction and evade a potential judgment is hardly far-fetched.  Defendants' actions as alleged in the complaint show them to be duplicitous and to routinely transfer funds without authorization as part of their fraudulent scheme to siphon money from plaintiff's accounts.

Further, information available from the New York Banks may reveal what the individual defendants did with the funds deposited at the defendant banks and evidence of continuing or planned violations by the individual defendants. *See Twentieth Century Fox Film Corp. v. Mow Trading Corp.*, 749 F. Supp. 473, 475 (S.D.N.Y. 1990) (granting expedited discovery in part because such discovery might "avoid[] irreparable harm.  Inquiry . . . on an expedited basis may very well lead to evidence of continuing [violations and]. . . may also lead to the discovery of future plans to [violate] or the discovery of additional [violations].")  Moreover, non-party discovery regarding bank accounts is normally permitted under Federal Rule of Civil Procedure 45. *See In re Sumar*, 123 F.R.D. 467, 473-74 (S.D.N.Y. 1988) (Court required non-party bank to produce documents and a witness for deposition regarding party's assets).  Here, this discovery is necessary so that plaintiff may seek an order of attachment in order to preserve his ability to collect a future judgment.

### 2. Plaintiff Has a Probability of Success On His Claims.

Even under the more stringent *Notaro* standard, plaintiff need not demonstrate likelihood of success on every one of his claims. *See Twentieth Century Fox Film Corp. v. Mow Trading Corp.*, 749 F. Supp. 473, 475 (S.D.N.Y. 1990) (granting expedited discovery on finding of likelihood of success on two of the plaintiff's four claims); *see In re Feit & Drexler, Inc.*, 760 F.2d 406, 416-17 (2d Cir. 1984) (upholding District Court's ruling that the analogous success on the merits prong of a preliminary injunction inquiry was satisfied where the plaintiff demonstrated "probable success" on

four of its six claims).   Here, Dr. Ayyash is likely to succeed on his claims of defendants' civil RICO violations and defendants' conspiracy to violate RICO.

### a.   RICO

Plaintiff's primary claim arises under RICO.  To state a claim under RICO, plaintiff must allege that defendants engaged in "(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity (5) resulting in (6) injury to business or property." *Zito v. Leasecomm Corp.*, 02 Civ. 8074 (GEL), 2004 WL 2211650 at *6 (S.D.N.Y. Sept. 30, 2004) (internal citations and quotation marks omitted); *see Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143, 154 (1987) ("[T]he heart of any RICO complaint is the allegation of a *pattern* of racketeering activity.") (emphasis in the original).

The complaint in this action alleges all elements of a civil RICO claim.  The defendant banks constitute "enterprises" as they are legal entities organized under the laws of Lebanon.  18 U.S.C. § 1961(4); *see Alfadda v. Fenn*, 935 F.2d 475, 479 (2d Cir.) (holding that RICO applies to foreign entities), *cert. denied*, 502 U.S. 1005 (1991); *United States v. Parness*, 503 F.2d 430, 439 (2d Cir. 1974) (rejecting argument that RICO was not intended to apply to foreign enterprises).  The individual defendants gained control of and conducted the affairs of these enterprises through their racketeering activity, *i.e.*, participating in the scheme orchestrated by Rana.  (Compl. ¶¶ 3-4, 20-60.)

The numerous related acts of wire fraud and money laundering committed by the individual defendants form a "pattern of racketeering activity."  18 U.S.C. § 1961(5); *see Ideal Steel Supply Corp. v. Anza*, 373 F.3d 251, 256 (2d Cir. 2004) (mail

fraud and wire fraud are defined as racketeering activity by statute, and two or more related acts of racketeering activity generally constitute a "pattern"); *Madanes v. Madanes*, 981 F. Supp. 241, 253-54 (S.D.N.Y. 1997) (mail fraud, wire fraud, and money laundering constitute predicate acts under RICO).

Here, the individual defendants' acts are all related to the goal of defrauding depositors at the defendant banks, including Dr. Ayyash, for the defendants' own personal benefit. The defendants' acts were also continuous, beginning at least in about November 1999, and would have likely continued if not for the collapse of the defendant banks. (Compl. ¶¶ 5, 20-60.) Predicate acts that are related and continuous constitute a "pattern." *Madanes*, 981 F. Supp. at 255-56 (numerous acts perpetrated to defraud others of assets were related and continuous, and thus constituted a pattern).

RICO applies to foreign parties where conduct material to the completion of the fraud occurred in the United States. *See Alfadda*, 935 F.2d at 479 (applying RICO to foreign defendants where conduct material to the fraud occurred in the United States); *Madanes*, 981 F. Supp. at 250 (wire transfers to New York City constituted material predicate acts in RICO action). Here, as in *Madanes,* wire transfers in and out of banks in this District satisfy this conduct test. Defendants used these transfers as an integral part of their racketeering scheme, and by doing so committed predicate acts of wire fraud and money laundering. (Compl. ¶¶ 38–48; Walzer Aff. Ex. 1 at 7, Exs. F, G.)

### b. Conspiracy to Violate RICO

In addition to the primary RICO claim, Count II of the complaint alleges defendants' conspiracy to violate RICO under 18 U.S.C. § 1962(d). (Compl. ¶¶ 4–5, 20–60, 77-80.) The Supreme Court has held that

> a conspiracy may exist [under section 1962(d)] even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense. . . . The partners in the criminal plan must agree to pursue the same criminal objective and may divide up the work, yet each is responsible for the acts of each other.

*Salinas v. United States*, 522 U.S. 52, 63-64 (1997) (internal citations omitted). Here, the agreement by Rana, Taha, Bassel, Moawad and Ayyash to use the defendant banks to defraud Dr. Ayyash and the other depositors for their own personal gain renders them liable under section 1962(d). *See id.* at 65 ("it suffices that [each conspirator] adopt the goal of furthering or facilitating the criminal endeavor.")

### 3. The Requested Discovery Will Avoid Irreparable Injury to Plaintiff and Cause No Injury To Defendants.

As discussed above in sections A.2 and B.1, Dr. Ayyash will suffer irreparable injury if he is forced to delay discovery for the many months it will take for service in Lebanon of the summons and complaint through letters rogatory, while defendants will suffer no prejudice.

## II. EX PARTE ATTACHMENT IS APPROPRIATE.

On identifying defendants' assets located in New York, plaintiff seeks to attach those assets up to the amount of damages sought in this action. Based on the defendants' location in Lebanon, their past wrongful conduct, the uncertain political

climate in Lebanon, and defendants' connections with the now-departed Syrian powers, defendants may well seek to move or consolidate their assets. Pursuant to Fed. R. Civ. P. 64, C.P.L.R. Article 62 governs orders of attachment. *OSRecovery, Inc. v. One Groupe Int'l, Inc.*, 305 F. Supp. 2d 340, 348 (S.D.N.Y. 2004).[3] To prevail on a motion for an order of attachment, plaintiff need only show (1) "that there is a cause of action [and] that it is probable that the plaintiff will succeed on the merits," (2) "that one or more grounds for attachment provided in section 6201 exist," and (3) "that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff." C.P.L.R. 6212(a).

Here, attachment is proper because plaintiff is entitled to a money judgment which exceeds all known counterclaims and, *inter alia*, the individual defendants are nondomiciliaries residing without New York State and the defendant banks are foreign business entities not qualified to do business in New York. C.P.L.R. 6201(1).

### A. Plaintiff Will Probably Succeed On The Merits.

As discussed above in section I.B.2., plaintiff has established that he will probably succeed on the merits of his claims of defendants' civil RICO violations and conspiracy to violate RICO. Plaintiff has alleged that he lost his deposits at the defendant banks and other funds due to defendants' fraudulent acts. Defendants can offer no legitimate explanation for their unauthorized use and enjoyment of plaintiff's

---

[3]. "At the commencement of and during the course of an action, all remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the law of the state in which the district court is held, existing at the time the remedy is sought. . . ." Fed. R. Civ. P. 64.

funds, indicating that attachment is proper. *Mineola Ford Sales Ltd. v. Rapp*, 242 A.D.2d 371, 371-72, 661 N.Y.S.2d 281, 281-282 (2d Dep't 1997) (employee's diversion of employer's funds for her personal use demonstrated likelihood of ultimate success on the merits of fraud claim and thus warranted pre-judgment attachment). Further, an order of attachment is "especially appropriate" where defendants can easily remove the property from the jurisdiction, as is the case here with any funds in the New York Banks. *Haywin Textile Prods., Inc. v. Int'l Fin. Invest. & Commerce Bank Ltd.*, 152 F. Supp. 2d 409, 414 (S.D.N.Y. 2001) (granting a prejudgment attachment in addition to temporary restraining order when property could be easily removed from the jurisdiction).

  **B.** **Defendants Are Nondomiciliaries Residing Abroad.**

  Plaintiff has also established the second element of the test for attachment − *i.e.,* that it has satisfied one of the grounds set forth in C.P.L.R. 6201. In this case, "defendant is a nondomiciliary residing without the state." C.P.L.R. 6201(1); *see Cargill, Inc. v. Sabine Trading & Shipping Co.*, 756 F.2d 224, 227 (2d Cir. 1985) (stating that C.P.L.R. 6201(1) serves the "purpose of providing security for a potential judgment against a nonresident"); *Davila Pena v. Morgan,* 149 F. Supp. 2d 91, 93-94 (S.D.N.Y. 2001) (confirming *ex parte* attachment where the defendant was a nondomiciliary residing outside the state and the plaintiff had a continuing need for security); *Georgia-Pacific Corp. v. Multimark's Int'l, Ltd.*, 265 A.D.2d 109, 112-13, 706 N.Y.S.2d 82, 84 (1st Dep't 2000) (affirming order confirming *ex parte* order of attachment on New York assets of Panamanian corporation with principal place of business in Brazil). Rana, Taha, Bassel,

Moawad and Ayyash are all Lebanese citizens residing outside of New York, and the defendant banks are business entities based in Lebanon which do not conduct business in New York. (Compl. ¶¶ 7-13.) Accordingly, plaintiff has satisfied the requirements of C.P.L.R. 6201(1) for an order of attachment.

### C. Plaintiff Requests Attachment Of Assets Exceeding Any Known Counterclaims.

Plaintiff lost at least $1 billion as a result of defendants' racketeering activities. (Compl. ¶¶ 1, 20-60; Walzer Aff. ¶ 6). No known counterclaims exist here, nor does plaintiff have reason to believe that the defendants could establish any such claims. (Walzer Aff. ¶ 7). Accordingly, plaintiff has satisfied the third and final prong of C.P.L.R. 6212.

### D. New York Law Allows Pre-Service Attachment.

Finally, C.P.L.R. 6211(a) specifically permits orders of attachment before service of the summons, noting that "[a]n order of attachment may be granted without notice, before or after service of summons and at any time prior to judgment." *See Georgia-Pacific Corp. v. Multimarks Int'l Ltd.*, 265 A.D.2d 109, 706 N.Y.S.2d 82 (1st Dep't 2000) (affirming confirmation of *ex parte* order of attachment against a foreign corporation with assets in New York banks). Accordingly, the request for the order of attachment is proper under Fed. R. Civ. P. 64 and C.P.L.R. Article 62.

## **Conclusion**

For the foregoing reasons, the Court should grant plaintiff's motion to allow service of expedited discovery requests on the New York Banks and permit attachment of any assets of the defendants; up to $1 billion in value.

Dated:   New York, New York
         June 7, 2005

                                    HUGHES HUBBARD & REED LLP

                                    _____/s_____
                                    By:   Daniel H. Weiner (DW 6140)
                                          David G. Liston (DL 2348)
                                          Melissa R. Chernofsky (MC 9673)
                                    One Battery Park Plaza
                                    New York, NY 10004
                                    (212) 837-6000

                                    Attorneys for Plaintiff

NY 944274_1.DOC